THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GEORGE N. KOUTSAKIS, Defendant-Appellee.

Third District  No. 3—94—0636

Opinion filed April 25, 1995.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Matthew A. Maloney, of Pierson, Maloney & Rayfield, of Princeton, and Nancy A. Hollander, of Albuquerque, New Mexico, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, George N. Koutsakis, was charged by indictment with the offense of cannabis trafficking (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 705.1). Following a hearing, the circuit court of Bureau County granted Koutsakis' motion to suppress evidence and statements. The State appeals from the suppression order.

On appeal, the State contends that the trial court erred in granting Koutsakis' motion. We disagree and affirm.

## FACTS

This is the second time this case has been before this court on appeal. In *People v. Koutsakis* (1993), 255 Ill. App. 3d 306, 627 N.E.2d 388, we affirmed an order of the trial court which imposed sanctions on the State. The sanction order restricted the testimony of Trooper James Lower and Trooper Craig Graham, the State Police officers involved in the stop and search of Koutsakis' vehicle. The sanction

order was imposed because the State destroyed a tape recording of various radio transmissions made by the officers during the stop and search of Koutsakis' vehicle. The tape was destroyed after it had been requested by Koutsakis' counsel.

Following remand, a hearing was held regarding Koutsakis' motion to suppress the evidence seized from his vehicle and the statements he made to the State police. At the beginning of the hearing, the prosecutor informed the judge that the parties had agreed that the judge could consider the evidence presented at the two hearings held prior to the first appeal.

Julie Maxeiner, a communications supervisor with the State police, had previously testified concerning written radio logs (logs) of communications involved in the stop of Koutsakis' vehicle. According to Maxeiner, the logs showed that Lower called in the stop of Koutsakis' vehicle just before 5:47 p.m. on November 11, 1992. An additional call was made at 5:51 p.m. indicating that the stop was progressing and Lower was comfortable with the situation. At approximately 6:05 p.m., Lower transmitted an activity code related to narcotics. Maxeiner stated that this code "just means somewhere in the officer's mind this had changed to a drug investigation." Maxeiner noted that this transmission occurred about 18 minutes after the stop. At 6:07 p.m., the logs indicated that Lower requested assistance and a tow truck. Maxeiner noted that the logs were not always correct, and the tape would provide more accurate information regarding the actual time of all radio transmissions.

At the suppression hearing, the sanctions order prohibited Lower and Graham from testifying concerning: (1) the time Lower stopped Koutsakis' vehicle: (2) whether Lower requested information on any other vehicle at the same time; (3) the time Lower began writing the warning ticket he gave Koutsakis for speeding; (4) the time Lower requested assistance from Graham; (5) Graham's location at the time he received Lower's request for assistance; (6) the information Lower transmitted to Graham regarding the need for assistance; and (7) the time Graham arrived at Koutsakis' vehicle with his dog. Nevertheless, the two officers did testify concerning the stop of Koutsakis' vehicle on November 11, 1992.

Trooper Lower said he was running radar on Interstate 80. The posted speed limit at his location was 65 miles per hour. Lower said he clocked Koutsakis' vehicle at 69 miles per hour. Lower then stopped the vehicle. Koutsakis produced a driver's license and a rental agreement for the vehicle. Lower asked Koutsakis to come back to his squad car. Lower then began writing a warning ticket. Lower stated that he was also waiting for Trooper Graham's arrival

and for more information on the vehicle and the status of Koutsakis' driver's license. Lower also testified that he spent some time reviewing the rental agreement. Testimony was presented that a warning ticket requires significantly less information than a routine traffic ticket and takes less time to write.

When Trooper Graham arrived, Koutsakis was still seated in Lower's squad car. Graham exited his squad car accompanied by his drug-sniffing dog. Graham walked the dog around Koutsakis' vehicle. The dog alerted, and Graham informed Lower of the alert. Lower then asked Koutsakis if there were any drugs in the vehicle. Koutsakis initially denied knowledge of any drugs. Shortly thereafter, he admitted having a small bag of cannabis. As a result, the vehicle was subsequently searched, and a large amount of cannabis was found.

Koutsakis testified that he signed a completed warning ticket prior to Trooper Graham's arrival. Koutsakis said he was waiting for Lower to return his driver's license so he could leave. Instead of returning the license, Lower asked Koutsakis various questions and made conversation.

Following this testimony, Koutsakis' counsel argued that the detention was illegal because Lower was stalling for more time in order for Graham to arrive with the drug-sniffing dog. In response, the prosecutor argued that the evidence showed a normal sequence of events. The prosecutor referred to the logs and argued that they showed the time of the traffic stop and a communication four minutes later. Following that communication, the logs showed another communication 14 minutes later which indicated that it was now a drug stop. The prosecutor argued that a fair inference from the evidence was that this later communication took place *after* the drugs were found in Koutsakis' vehicle.

Koutsakis' counsel argued that the logs showed a total time passage of 20 minutes. She argued that "twenty minutes is too long under anybody's inference to write a one page warning."

The trial judge granted Koutsakis' motion to suppress. The judge indicated that the length of Koutsakis' detention was unreasonable. The judge said it was obvious from the evidence that Trooper Lower extended the time of the detention so Graham could arrive with the drug-sniffing dog. The judge entered a written order which stated: (1) the traffic stop was valid only long enough to write a warning ticket for speeding; (2) according to the logs, the length of the detention was either 14, 18 or 20 minutes; (3) based on the evidence presented, the time Koutsakis was detained was too long for the issuance of a warning ticket; (4) the detention was illegal; and (5) the evidence seized and the statements given as a result of the illegal detention must be

suppressed. The State filed a timely notice of appeal from the trial court's suppression order.

## STANDARD OF REVIEW

In ruling on a motion to suppress, it is the function of the trial judge to determine the credibility of the witnesses and to resolve any conflict in their testimony. (*People v. Melock* (1992), 149 Ill. 2d 423, 432, 599 N.E.2d 941, 944.) Accordingly, a trial court's determination on a motion to suppress is entitled to great deference. (*People v. Smith* (1994), 266 Ill. App. 3d 362, 364, 640 N.E.2d 647, 648.) The trial judge's ruling will not be disturbed on review unless it is manifestly erroneous. *Melock*, 149 Ill. 2d at 432, 599 N.E.2d at 944.

## BURDEN OF PROOF

Initially, the State argues that the trial judge's ruling was manifestly erroneous because Koutsakis failed to meet his burden to show that the search and seizure were illegal. The State contends that Koutsakis failed to meet this burden because he did not present any evidence concerning the amount of time that he was detained before Trooper Graham arrived and the dog alerted.

It is true that, on a motion to suppress evidence, the defendant has the burden of showing that the search and seizure were unlawful. (725 ILCS 5/114—12(b) (West 1992); *People v. Janis* (1990), 139 Ill. 2d 300, 308, 565 N.E.2d 633, 637.) However, "[o]nce the defendant makes a *prima facie* showing that the search and seizure were unlawful, the burden shifts to the State to come forward with evidence justifying the intrusion." *People v. Graf* (1994), 265 Ill. App. 3d 746, 750, 638 N.E.2d 1181, 1184; see also *People v. Spann* (1992), 237 Ill. App. 3d 705, 708, 604 N.E.2d 1138, 1141.

Here, the logs were admitted into evidence prior to the suppression hearing. The parties agreed that this evidence could be considered by the trial court in ruling on the motion to suppress. The logs, as interpreted by Maxeiner, showed that a lengthy period of time had elapsed between the time Koutsakis was stopped for speeding and the time Lower transmitted an activity code related to narcotics. Lower, Graham and Koutsakis all testified that Koutsakis was detained in Lower's squad car during this period of time. After a careful review of the record, we conclude that the evidence presented was sufficient to make a *prima facie* showing that Koutsakis' detention was unreasonably long and unlawful. As a result, the burden appropriately shifted to the State to present evidence justifying Koutsakis' lengthy detention.

## DETENTION FOLLOWING TRAFFIC STOP

The State also contends that it did, in fact, establish that Koutsakis was lawfully detained for a reasonable length of time prior to the alert by Graham's drug-sniffing dog. We agree with the parties that the critical time period in this case is the period of time from the initial stop of Koutsakis' vehicle until the dog's alert.

When a vehicle is stopped for a minor traffic violation, a search of the vehicle is not justified. (*People v. Evans* (1994), 259 Ill. App. 3d 650, 656, 631 N.E.2d 872, 876; *People v. Stewart* (1993), 242 Ill. App. 3d 599, 605, 610 N.E.2d 197, 202.) Accordingly, there was no basis for a search of Koutsakis' vehicle prior to the dog's alert. (See 1 W. LaFave, Search & Seizure § 2.2(f), at 366-67 (2d ed. 1987) (under certain circumstances, an alert by a trained dog is deemed to constitute probable cause for a search).) Therefore, if Koutsakis was not lawfully detained at the time of the alert, the search was unlawful.

Here, there is no dispute that Koutsakis was properly stopped for speeding. The investigatory stop of a vehicle traveling in excess of the posted speed limit is proper. (*People v. Hood* (1994), 265 Ill. App. 3d 232, 241, 638 N.E.2d 264, 271.) A usual traffic stop, such as this one, is considered a "*Terry* stop" rather than a formal arrest. (*Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202, citing *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) A *Terry* stop contemplates a *brief* intrusion, as minimal as possible, to verify information or to ascertain whether criminal activities have in fact taken place. (*People v. Frazier* (1993), 248 Ill. App. 3d 6, 14, 617 N.E.2d 826, 833; *People v. Schacht* (1992), 233 Ill. App. 3d 271, 275, 599 N.E.2d 43, 46.) The investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer* (1983), 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325; *Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202.

When a policeman stops a vehicle for a minor traffic violation, the officer may briefly detain the driver to request a valid driver's license. (*People v. Jennings* (1989), 185 Ill. App. 3d 164, 169, 541 N.E.2d 155, 158.) Also, under certain circumstances, the police may conduct a speedy warrant check. (*People v. Clodfelder* (1988), 172 Ill. App. 3d 1030, 1035-36, 527 N.E.2d 632, 636.) If no further suspicion is aroused in the officer following these initial inquiries, the traffic stop may go no further and the individual should no longer be detained. See *People v. Smith* (1991), 208 Ill. App. 3d 44, 50, 566 N.E.2d 939, 943.

There is no talismatic time beyond which a traffic stop initially justified on the basis of *Terry* becomes an unreasonable seizure under the fourth amendment. (See *Smith*, 208 Ill. App. 3d at 50, 566 N.E.2d at 943.) However, the brevity of the stop is an important factor when

determining whether the stop is reasonable. (*Smith*, 208 Ill. App. 3d at 50, 566 N.E.2d at 943.) Courts must consider the purpose to be served by the stop as well as the time reasonably needed to effectuate those purposes. (*People v. Hardy* (1986), 142 Ill. App. 3d 108, 114, 491 N.E.2d 493, 498.) An officer's authority to investigate a traffic violation may not become a subterfuge in order to obtain other evidence merely based on the officer's suspicion. *Evans*, 259 Ill. App. 3d at 656, 631 N.E.2d at 876; *Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202.

In this case, Koutsakis was stopped for a minor traffic violation. Following the stop, Lower could legitimately check Koutsakis' driver's license, run a warrant check and issue a warning ticket. After this was accomplished, and no further suspicion was aroused, Koutsakis could no longer be detained. Lower did not testify that these legitimate inquiries provided a valid basis for searching Koutsakis' vehicle. Instead, as previously noted, no valid basis for searching the vehicle existed until Graham's dog alerted.

Here, as a consequence of the sanction order previously upheld by this court, little evidence was presented regarding the amount of time that Koutsakis was detained prior to Graham's arrival. However, both the State and Koutsakis argued at the suppression hearing that the logs should be considered as some evidence concerning the length of Koutsakis' detention.

## CONCLUSION

The trial court determined that a stop of 14, 18 or 20 minutes was too long to write a warning ticket for a minor speeding offense. The basis for the court's conclusion came directly from Maxeiner's testimony and counsel's arguments concerning the logs. The trial court concluded that Koutsakis was detained longer than the time reasonably necessary for Trooper Lower to conduct the legitimate police activities normally associated with a routine traffic stop. The trial judge specifically found that Lower was stalling for additional time so that Graham could arrive with the drug-sniffing dog.

In ruling on a motion to suppress, the trial judge is best suited to assess the credibility of the witnesses and weigh their testimony. (*People v. Smith* (1994), 266 Ill. App. 3d 362, 364, 640 N.E.2d 647, 648.) The trial judge's ruling is entitled to great deference. (*Smith*, 266 Ill. App. 3d at 364, 640 N.E.2d at 648.) Accordingly, the trial judge's determination of factual matters in a hearing on a motion to suppress will not be disturbed unless manifestly erroneous. *People v. Free* (1983), 94 Ill. 2d 378, 401, 447 N.E.2d 218, 229.

Following our careful review of the record, we conclude that the trial court's finding was not manifestly erroneous. For the reasons

indicated, we affirm the judgment of the circuit court of Bureau County.

Affirmed.

STOUDER, P.J., and SLATER, J., concur.