THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. VICTOR BRANCH, Defendant-Appellee.

Second District   No. 2—97—0433

Opinion filed March 19, 1998.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Linda A. Johnson, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, Victor Branch, was charged with the unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1996)), possession of a firearm without a firearm owner's identification card (430 ILCS 65/2(a)(1) (West 1996)), and the unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1996)). The trial court granted his motion to suppress the evidence, and the State appeals (see 145 Ill. 2d R.

604(a)), contending that the search of the vehicle defendant was driving was proper.

The evidence presented at the hearing on the motion to suppress established that defendant was driving a car owned by Christy Boyton. The car had a license-applied-for sticker on the rear window. The front seat passenger was Frank Rodriguez, Boyton's boyfriend, and the backseat passenger was Carlos Acevedo.

Officer Michael Myhre of the Aurora police department stopped the vehicle because he could not read the sticker. As he approached the driver's window of the car, he was able to read the vehicle identification number. Myhre requested defendant's identification and the vehicle's registration. He also informed defendant that he and the passenger needed to wear seat belts. Defendant handed Myhre some identification (ID), although it is not clear whether it was a driver's license or a state ID card. Defendant told Myhre that Rodriguez was the vehicle's owner, so Myhre requested Rodriguez's ID and the vehicle's registration, which Rodriguez gave him. Myhre also requested and received Acevedo's ID. Myhre admitted that, when he asked for the ID, he did not suspect Acevedo of any criminal activity. Myhre intended to give warnings for the failure to wear seat belts and the improper display of the license sticker. Myhre then went to his squad car and ran a computer warrant check on the IDs. About three minutes expired between the time the vehicle was stopped and when Myhre took the IDs to go run the computer check.

Another officer arrived to assist as backup. Myhre learned that Acevedo had an outstanding warrant, so Acevedo was arrested, handcuffed, and placed in the squad car. The police informed Rodriguez that, incident to that arrest, they were going to search the backseat of the car for weapons. Rodriguez told the officers they could search the entire car. The police smelled marijuana and then found marijuana cigarettes in the ashtray, so they arrested both defendant and Rodriguez. Defendant was then searched and apparently a gun was found.

Relying on *People v. Arteaga*, 274 Ill. App. 3d 781 (1995), the trial court found that, after the officer saw the valid registration and defendant tendered a facially valid license, the officer had no reason to detain defendant any longer. Consequently, ordering defendant to wait while the officer ran the computer check exceeded the justification of the stop and resulted in an unlawful seizure. The court therefore granted defendant's motion to suppress. The State contends that the officer's detention and search of defendant were justified. Ordinarily, a trial court's ruling on a motion to suppress evidence will not be disturbed unless it is manifestly erroneous. *People v.*

*Krueger*, 175 Ill. 2d 60, 64 (1996). However, when there is no question of fact, we review *de novo* the trial court's determination of reasonable suspicion to stop a vehicle and probable cause to conduct a search. See *People v. Shapiro*, 177 Ill. 2d 519, 524 (1997); see also *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). Although there is some question whether defendant tendered a facially valid license, because the outcome of our analysis would not change in any event, we accept the trial court's finding that defendant did give the officer a valid license.

■ The United States Constitution protects people "against unreasonable searches and seizures." U.S. Const., amend. IV. The Illinois Constitution of 1970 has a similar provision. See Ill. Const. 1970, art. I, § 6. Under *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968), the fourth amendment permits minimally intrusive investigatory stops of people when there is a reasonable suspicion of criminal activity. See also 725 ILCS 5/107—14 (West 1996). The length and scope of the detention "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19, 20 L. Ed. 2d at 904, 88 S. Ct. at 1878, quoting *Warden v. Hayden*, 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, 1652 (1967) (Fortas, J., joined by Warren, C.J., concurs). "The investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *People v. Koutsakis*, 272 Ill. App. 3d 159, 163 (1995), citing *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983).

■ We note that the initial stop of the vehicle was valid, as the absence of a license plate and the officer's inability to read the sticker provide a valid basis for an investigatory stop. See *People v. Bradley*, 292 Ill. App. 3d 208, 210 (1997). Moreover, once the officer properly stopped the vehicle, he could approach the driver to explain the purpose of the stop. See *People v. Adams*, 225 Ill. App. 3d 815, 819 (1992). At that point, the officer observed a violation of the traffic law, that defendant and the front seat passenger were not wearing seat belts. See 625 ILCS 5/12—603.1(a) (West 1996) (the driver and front seat passenger must wear seat belts).

The State argues that the trial court erred in relying on *Arteaga*. In *Arteaga*, the Appellate Court, Third District, ruled that a seizure occurs when, after being tendered a facially valid driver's license, a police officer detains the defendant to run a warrant check. *Arteaga*, 274 Ill. App. 3d at 783.

*People v. McVey*, 185 Ill. App. 3d 536 (1989), on which *Arteaga* relied, does not support *Arteaga*'s ruling. In *McVey*, the officer ap-

proached a parked vehicle and ordered the occupant to return to the car; the occupant was not already detained as part of a legitimate traffic stop. *McVey*, 185 Ill. App. 3d at 537-38. Therefore, when the officer ordered the defendant to return to the car while the officer ran a check on the license, the defendant was unlawfully seized. *McVey*, 185 Ill. App. 3d at 539. The Appellate Court, Third District, followed *Arteaga* in *People v. Sinclair*, 281 Ill. App. 3d 131, 135 (1996). However, *Sinclair* also based its reasoning on *State v. Robinette*, 73 Ohio St. 3d 650, 653 N.E.2d 695 (1995), which was reversed by the United States Supreme Court in *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). The Supreme Court there noted that " 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.' " *Robinette*, 519 U.S. at 38-39, 136 L. Ed. 2d at 354, 117 S. Ct. at 421, quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6, 54 L. Ed. 2d 331, 337 n.6, 98 S. Ct. 330, 333 n.6 (1977). *Robinette* held that a police officer need not tell a driver that he is free to leave before asking the driver's consent to search the vehicle. *Robinette*, 519 U.S. at 39-40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421.

By contrast, there is a long line of cases which ruled that, under most circumstances, a police officer may run a quick warrant check of a facially valid driver's license when the driver has been stopped for a minor traffic violation. See *People v. Perez*, 288 Ill. App. 3d 1037, 1044 (1997); *People v. Easley*, 288 Ill. App. 3d 487, 491 (1997); *Koutsakis*, 272 Ill. App. 3d at 163; *People v. Clodfelder*, 172 Ill. App. 3d 1030, 1035-36 (1988); *People v. Ellis*, 113 Ill. App. 3d 314, 319-20 (1983). We believe that the rationale of these cases is more sound, as reasonableness, the touchstone of the fourth amendment, "is measured in objective terms by examining the totality of the circumstances." *Robinette*, 519 U.S. at 39, 136 L. Ed. 2d at 354, 117 S. Ct. at 421. The Supreme Court has "consistently eschewed brightline rules" (*Robinette*, 519 U.S. at 39, 136 L. Ed. 2d at 354, 117 S. Ct. at 421) in this context, and we believe that it is unwise to adopt such a *per se* rule as forbidding a police officer ever to run a warrant check merely because the driver has produced a facially valid license. We therefore decline to follow *Arteaga*, and we adhere to the rule of the above-cited cases that permits an officer to run a warrant check if, under the circumstances, to do so is reasonable.

Consequently, we disagree with the trial court that Officer Myhre could not run a warrant check on defendant's license after discovering that defendant violated the traffic laws by failing to wear a seat

belt. However, that does not end our inquiry. We must next determine whether it was permissible for the officer to ask for and run a warrant check on the ID of the backseat passenger. The only authority the State cites for this assertion is *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882 (1997). However, *Wilson* merely held that, in the interest of the officer's safety, an officer making a traffic stop may order passengers to get out of the car during the stop. *Wilson*, 519 U.S. at 415, 137 L. Ed. 2d at 48, 117 S. Ct. at 886. This holding was based on the balancing of the individual's right to be free from arbitrary interference against the strong public interest in the officer's safety. *Wilson*, 519 U.S. at 411, 137 L. Ed. 2d at 46, 117 S. Ct. at 885. No similar competing interest is present here.

Although the State cites *People v. Jennings*, 185 Ill. App. 3d 164 (1989), in support of its argument concerning *Arteaga*, we are troubled by its misreading of the case. The State's brief asserts that the appellate court in *Jennings* "[held] that because the police officer observed the defendant speeding, he [was] justified in stopping the car[ ]" and had "the authority to briefly detain the driver and request that he produce a valid driver's license." However, in *Jennings*, the defendant was a passenger in his own vehicle. The car was pulled over for speeding, and the officer asked for both the driver's and defendant's licenses, and he ran a warrant check on both.

The appellate court ruled that the stop and the check of the driver's license were proper. However, it ruled that the request for the defendant's license was improper. *Jennings*, 185 Ill. App. 3d at 169. The State in *Jennings* relied on *Ellis*, 113 Ill. App. 3d 314, and *People v. Eyler*, 132 Ill. App. 3d 792 (1985). The court disagreed with the State, explaining that, in those cases, the officer ran a warrant check on the detained person. In *Jennings*, the officer "had no reason to suspect [the] defendant of criminal activity at the time of the initial stop." *Jennings*, 185 Ill. App. 3d at 169. The court concluded that the officer did not have the authority to demand the production of the defendant's driver's license when he was not the driver of the vehicle. *Jennings*, 185 Ill. App. 3d at 169. This ruling is directly contrary to the State's position that Officer Myhre could request the backseat passenger's ID.

We find *Jennings* directly on point. Here, as in *Jennings*, Officer Myhre had no reason to suspect the backseat passenger of any criminal activity. In fact, Myhre testified that, when he asked Acevedo for his ID, Myhre was "[j]ust asking," and he did not have any suspicion that a crime was being committed.

We therefore conclude that the officer did not have the authority to request an ID from the backseat passenger. At that point, the

detention should have ceased (see *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82, 45 L. Ed. 2d 607, 617, 95 S. Ct. 2574, 2580 (1975) (the inquiry must be related to the reason for the stop, and any further detention must be based on consent or probable cause)), and the officer should have written the warning ticket and allowed defendant to drive away. Consequently, we affirm the trial court's order suppressing the evidence.

The order of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER, P.J., and McLAREN, J., concur.