THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT SAFUNWA, Defendant-Appellant.

Second District    No. 3—97—0745

Opinion filed October 20, 1998.

Frederick F. Cohn, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial, the defendant, Albert Safunwa, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)) and sentenced to 24 months' probation. On appeal, the defendant contends that the trial court erred in denying his motion to suppress evidence. We affirm.

Prior to trial, the defendant moved to suppress the drug evidence that formed the basis of his conviction. At the suppression hearing, Officer Matthew Block of the United States Marshal Service testified that, on September 30, 1996, he and his partner were in search of a fugitive named Kenny Ladipo. Ladipo was wanted on a federal warrant for the distribution of heroin. In an attempt to locate Ladipo, Block and his partner were conducting surveillance at the home of Ladipo's wife in Melrose Park. Although Block had never seen Ladipo before, he did have a photograph of the fugitive.

During surveillance, Block observed a white BMW parked in the home's driveway with an individual sitting inside. A short time later, another vehicle arrived at the house. At this time, the drivers of both vehicles exited the cars and walked to the rear of the house. After 15 to 20 minutes, the driver of the BMW returned to his car and pulled out of the driveway.

Block and his partner decided to follow the BMW because its driver matched the approximate height, weight, and age descriptions of Ladipo. In actuality, however, the vehicle was not being driven by Ladipo, but by the defendant, Albert Safunwa. They followed the vehicle for approximately half an hour. At one point, they were able to pull up next to the BMW at a red light and get a closer look at the driver. Based upon this observation, Block believed that the driver matched the photograph of Ladipo. Specifically, Block noted that both individuals had the same type of mustache and the same hairstyle. As Block continued to follow the BMW, he ran a check on the vehicle's license plates and discovered that it was registered to the defendant.

Block testified that he and his partner proceeded to conduct a traffic stop of the vehicle in Lombard. At the time they stopped the vehicle, Block acknowledged that he did not have a search warrant for the vehicle or an arrest warrant for the defendant. Block also acknowledged that he had not observed the vehicle commit any traffic violations prior to the stop. After stopping the vehicle, Block asked the defendant for his driver's license and the defendant handed him a traffic citation bearing his name.

At that point, Block conducted a computer search to verify the defendant's identity and to see if the license was valid. This computer

search took approximately 30 seconds. The search revealed that the defendant's license had been suspended. Block acknowledged that, at the time he ran the computer check, he did not suspect that the defendant was driving on an invalid license or that the defendant had committed any other crime. Block also was unable to indicate in what manner the license check would have given him any further information in determining whether the defendant was in fact Ladipo.

Block subsequently arrested the defendant for driving with a suspended license. Following his arrest, the defendant was taken to a local police station and searched. During the search, the police apparently discovered the drug evidence at issue.

On September 10, 1997, the trial court denied the defendant's motion to suppress. The trial court found that the officers had a reasonable basis for stopping the car, based on the similarity between the defendant's and Ladipo's appearance. Although the trial court noted that a close inspection of the photograph demonstrated that Ladipo and the defendant were different individuals, it nonetheless ruled that the police were justified in running a search on the defendant's license, commenting:

> "[A]fter a valid contact between police and a citizen[,] a request for a drivers license and check on the license is allowable so long as it is of a momentary intrusion and of limited duration. Here the evidence shows that the detention and intrusion [were] quite minimal—some sixty to ninety seconds. The public interest in allowing the license check outweighs the minimal intrusion on the defendant[;] for this reason his motion is denied."

In so ruling, the trial court noted that section 6—112 of the Illinois Vehicle Code (the Code) (625 ILCS 5/6—112 (West 1996)) requires all drivers to be in immediate possession of their licenses and to display the license upon request from authorized personnel. The trial court noted that this statute would have no meaning if officers were not permitted to check the tendered license's validity.

On appeal, the defendant argues that the police obtained the drug evidence as a result of an illegal search and seizure. Specifically, the defendant argues that the officers had no basis to stop his vehicle because they had already determined that the vehicle was not registered to Ladipo and because the defendant was clearly not the person in the photograph. Additionally, the defendant argues that, once the marshals stopped the car and realized that he was not Ladipo, they had no right to hold him to check the validity of the license.

■ Ordinarily, a trial court's ruling on a motion to suppress evidence will not be disturbed unless it is manifestly erroneous. *People v. Krueger*, 175 Ill. 2d 60, 64 (1996). The trial court's determination

regarding factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by a reviewing court. *People v. Moore*, 286 Ill. App. 3d 649, 652 (1997). However, when there is no question of fact, we will review *de novo* the trial court's ultimate determination as to whether there existed reasonable suspicion to stop a vehicle and probable cause to conduct a search. *People v. Branch*, 295 Ill. App. 3d 110, 112 (1998). In this case, the trial court made the specific finding that, upon a close inspection, the defendant did not resemble Ladipo's photograph. As there has been no showing that such a finding was erroneous, we will abide by this determination and will only concern ourselves with the pertinent legal questions. See *Branch*, 295 Ill. App. 3d at 112.

■ Both the United States and Illinois Constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). Under *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1880 (1968), the fourth amendment permits minimally intrusive investigatory stops of people when there is a reasonable suspicion of criminal activity. See also 725 ILCS 5/107—14 (West 1996). The length and scope of the detention "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19, 20 L. Ed. 2d at 904, 88 S. Ct. at 1878, quoting *Warden v. Hayden*, 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, 1652 (1967) (Fortas, J., concurs, joined by Warren, C.J.). The investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *People v. Koutsakis*, 272 Ill. App. 3d 159, 163 (1995).

■ We agree with the trial court that the initial stop of the defendant's vehicle was valid, as the officers had a reasonable belief that the defendant was Ladipo. The defendant matched the approximate height, weight, and age descriptions of Ladipo, and the officers observed him enter the home of Ladipo's wife. When Block pulled up alongside the defendant's vehicle at a traffic light, he also observed that the defendant had the same type of mustache and hairstyle as Ladipo. Based on such circumstances, we believe that the officers reasonably believed that the defendant was Ladipo and therefore had a justifiable basis to stop his car and request identification. Sufficient probability, rather than certainty, is the touchstone of reasonableness under the fourth amendment. See *Hill v. California*, 401 U.S. 797, 803-04, 28 L. Ed. 2d 484, 489-90, 91 S. Ct. 1106, 1110-11 (1971) (when officers have probable cause to arrest one party and they reasonably mistake a second party for the first party, then arrest of the second party is valid for purposes of fourth amendment search and seizure analysis).

However, as noted by the trial court, our analysis does not end here. We must also determine whether it was permissible for the officers to detain the defendant and run a check on his license even after he provided them with identification indicating that he was not Ladipo. As noted above, the trial court found that a close inspection of the photograph of Ladipo and the defendant would have shown that they were different individuals.

■ We note that, when a police officer stops a vehicle for a minor traffic violation, the officer may briefly detain the driver to request a valid driver's license and run a warrant check on the license. *Branch*, 295 Ill. App. 3d at 113; *Koutsakis*, 272 Ill. App. at 163. In the instant case, however, Block acknowledged that the defendant had not committed any traffic violations at the time of the stop. We therefore must consider whether the stopping of a vehicle as a result of mistaken identity is, for fourth amendment purposes, a sufficient justification to conduct a warrant check on the driver.

The precise issue here is one upon which there is no direct Illinois authority. However, we are aided in our analysis by the discussion of police investigatory powers contained in *People v. Clodfelder*, 172 Ill. App. 3d 1030, 1034-36 (1988). In that case, the defendant was stopped by police because his vehicle had no license plates. After being stopped, the defendant revealed that he had a valid license-applied-for sticker issued by the State of Colorado on his back window. *Clodfelder*, 172 Ill. App. 3d at 1034. Despite this showing, the police asked for the defendant's driver's license and ran a check on the license over their radio. *Clodfelder*, 172 Ill. App. 3d at 1034. The check revealed that several warrants had been issued for the defendant's arrest. The police subsequently searched the defendant's vehicle and found a .22-caliber rifle. *Clodfelder*, 172 Ill. App. 3d at 1034.

The *Clodfelder* court affirmed the defendant's conviction, holding that the evidence was properly obtained. *Clodfelder*, 172 Ill. App. 3d at 1036. The court acknowledged that, had the police been aware of the valid license-applied-for sticker before the stop, the initial stop of the defendant would not have been permissible under *Terry*. *Clodfelder*, 172 Ill. App. 3d at 1035. However, because the police did not have such knowledge, the stop of the defendant's vehicle was justified and the police were justified in detaining the defendant long enough to confirm identification and to find out if the defendant was wanted by law enforcement agencies. *Clodfelder*, 172 Ill. App. 3d at 1035-36. The court held that the out-of-state sticker provided a justifiable suspicion to detain the defendant during the check and that such a detention was only a "slight additional intrusion." *Clodfelder*, 172 Ill. App. 3d at 1036.

Additionally, we note that several Illinois courts have utilized section 6—112 of the Code to permit police to request production of a driver's license even in instances where there has been no initial suspicion of a traffic violation or other criminal activity. See *People v. McKnight*, 198 Ill. App. 3d 530, 533 (1990); *People v. Francis*, 4 Ill. App. 3d 65, 67 (1971). Section 6—112 states in part:

"Every licensee *** shall have his drivers license *** in his immediate possession at all times when operating a motor vehicle and *** shall display such license *** upon demand made *** by a member of the State Police, a sheriff or other police officer or designated agent of the Secretary of State." 625 ILCS 5/6—112 (West 1996).

In both *McKnight* and *Francis*, courts held that police had the right to request production of a driver's license without probable cause and that such a request did not constitute an illegal seizure. *McKnight*, 198 Ill. App. 3d at 533; *Francis*, 4 Ill. App. 3d at 67. In these cases, police officers made such a request upon drivers who were parked on the side of the road. *McKnight*, 198 Ill. App. 3d at 531; *Francis*, 4 Ill. App. 3d at 65-66. When the drivers were unable to produce their licenses, the courts held that the police had reasonable grounds to run the driver's name through the sheriff's dispatch. *McKnight*, 198 Ill. App. 3d at 533; *Francis*, 4 Ill. App. 3d at 66-67. But *cf. People v. McVey*, 185 Ill. App. 3d 536, 539-40 (1989) (absent probable cause, police may not conduct a warrant check after driver tenders an apparently valid license).

■ Applying these general principles to the instant case, we agree with the trial court that the officers could properly conduct a warrant check on the defendant's license. Upon the officers' request, the defendant was unable to produce a valid driver's license but instead tendered a traffic citation. Although we acknowledge that it is permissible to drive a motor vehicle with a traffic citation, we nonetheless find that, given the context of the initial stop, the officers had a sufficient justification in detaining the defendant long enough to confirm the validity of the defendant's license. See *McKnight*, 198 Ill. App. 3d at 533; *Francis*, 4 Ill. App. 3d at 66-67.

Indeed, we believe that the officers' justification to run a check on the defendant's license in the instant case was far greater than the justification that was approved by the court in *Clodfelder*. In *Clodfelder*, the court held that a valid license-applied-for sticker provided sufficient justification for the police to detain the driver for a few minutes to run a warrant check even after the driver had tendered an apparently valid driver's license. *Clodfelder*, 172 Ill. App. 3d at 1035-36. Here, the defendant had just been seen at the home of Ladipo's

wife and was unable to tender a valid license upon request. Despite the fact that the defendant's appearance did not resemble Ladipo's photograph, we nonetheless believe that these circumstances presented sufficient justification to detain the defendant for 30 seconds to confirm the validity of his license and confirm his identity without running afoul of the fourth amendment. See *People v. Ellis*, 113 Ill. App. 3d 314, 318-20 (1983); *Branch*, 295 Ill. App. 3d at 113.

We note that such a conclusion is in harmony with a number of other jurisdictions that have held that police may request a driver's license and run a warrant search without probable cause, provided there is an initial valid police-citizen contact. See *State v. Godwin*, 121 Idaho 491, 495-96, 826 P.2d 452, 456 (1992) (officer could request license and conduct warrant check on driver who voluntarily pulled off highway after his friend in another vehicle had been stopped for equipment violation); *State v. Perry*, 39 Or. App. 37, 42, 591 P.2d 379, 381 (1979) (officer could request driver's license and conduct warrant check on driver whom he misidentified as a wanted person); *Wisconsin v. Ellenbecker*, 159 Wis. 2d 91, 97, 464 N.W.2d 427, 430 (Wis. Ct. App. 1990) (officer conducting a "motorist assist" had right to request driver to produce driver's license and to run a check on license).

Moreover, we note that the courts in *Godwin* and *Ellenbecker* considered state statutes almost identical to section 6—112 of the Code. *Godwin*, 121 Idaho at 495-96, 826 P.2d at 456-57; *Ellenbecker*, 159 Wis. 2d at 97, 464 N.W.2d at 430. The court in *Ellenbecker* expressly stated that the purpose of such statutes is to deter persons from driving without a valid license, since a license is a statement that the driver can be expected to comply with the state's requirements for driving. *Ellenbecker*, 159 Wis. 2d at 98, 464 N.W.2d at 430. Both *Godwin* and *Ellenbecker* held that there was a valid public interest in permitting an officer to conduct a records check on a driver's license, as it would assist the officer in confirming the driver's identification and in determining the validity and status of the driver's license upon which the identification is based. *Godwin*, 121 Idaho at 495, 826 P.2d at 456; *Ellenbecker*, 159 Wis. 2d at 96-97, 464 N.W.2d at 429-30.

As already noted, in the instant case there was certainly a valid basis for the initial officer contact. Given the circumstances surrounding the stop and the fact that the defendant did not tender a valid license, we believe that the officers were justified in confirming the defendant's identification and in determining the validity and status of the traffic citation that the defendant offered as identification. Requesting a license and conducting a status check after a lawful contact is but a momentary occurrence and the intrusion is minimal at worst. See *Clodfelder*, 172 Ill. App. 3d at 1036. We therefore

conclude that the trial court properly denied the defendant's motion to suppress.

■ The defendant also briefly argues, without any supporting authority, that a United States marshal is not empowered to check the validity of a driver's license. As the defendant did not raise this argument at trial, and as he has failed to offer any authority in support of his contention, we decline to consider it on appeal. See *People v. Thornton*, 286 Ill. App. 3d 624, 636 (1997).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and THOMAS, JJ., concur.