THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM E. GROVE, Defendant-Appellee.

Fifth District    No. 5—01—0958

Opinion filed June 27, 2003.

WELCH, J., specially concurring.

Kevin Kakac, State's Attorney, of Fairfield (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Alan C. Downen, of McLeansboro, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The State charged the defendant, William E. Grove, with driving while his license was revoked (625 ILCS 5/6—303(d) (West 2000)), after a routine traffic stop for apparently driving a car without a valid registration. The defendant filed a motion to suppress the evidence, arguing that the police officer exceeded the permissible scope of the traffic stop by checking the defendant's license after discovering that the defendant's car registration was valid. The trial court granted the defendant's motion to suppress. The State appeals pursuant to Illinois Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)), arguing that the officer acted properly because checking a driver's license is standard procedure during a routine traffic stop. We reverse the trial court's ruling.

# I. BACKGROUND

On February 3, 2001, at approximately 5:15 a.m., Officer Jayson Murbarger observed the defendant's car. The registration tag was obscured by dust and dirt, so Officer Murbarger could not read it. To determine whether the defendant's registration was valid, Officer Murbarger checked the defendant's license plate number through a computer. While doing so, he followed the defendant's car. He estimated that he followed the defendant for approximately seven blocks. During this time, the defendant committed no traffic violations. The computer report indicated that defendant's registration had expired in November 1999 and that the license plate was registered to a car other than the car the defendant was driving. As a result of this information, Officer Murbarger stopped the defendant.

Officer Murbarger told the defendant the reason for the stop and asked him for his driver's license, registration, and proof of insurance. The defendant told the officer that he did have a valid registration for the car and gave him the requested documentation. Officer Murbarger took the documents back to his patrol car, where he looked at them and checked the defendant's driver's license number through the computer. Although the officer was not certain in which order he had looked at the documents, he unequivocally testified that he had requested all three at the same time. Upon inspecting the registration card, Officer Murbarger determined that it was valid for the car that the defendant was driving. At some point, he inspected the sticker on the defendant's plate and determined that it was valid as well, although he does not recall exactly when this occurred. As a result of checking the defendant's driver's license through the computer, Officer Murbarger discovered that it had been revoked. He issued the defendant a citation for that offense.

On February 9, 2001, the State charged the defendant by information with driving while license revoked (625 ILCS 5/6—303(d) (West 2000)). On July 12, 2001, the defendant filed a motion to suppress the evidence against him, contending that Officer Murbarger impermissibly extended the investigatory stop beyond the time needed to discover that his registration was valid. The court held a hearing on September 19, 2001, at which time it granted the defendant's motion to suppress. The State filed a motion to reconsider, which the court denied on November 14, 2001. The State filed a notice of impairment the next day and filed the instant appeal pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)) on December 11, 2001.

# II. ANALYSIS

The State contends that the trial court erred in suppressing the

evidence that the defendant's license had been revoked. The defendant argues that the ruling was proper because the trial court found that Officer Murbarger had determined that his registration was valid, thereby satisfying the purpose of the stop, prior to checking his license. The State argues that (1) it is unclear from the record exactly when Officer Murbarger determined that the registration sticker was valid and (2) even if he made this determination prior to checking the license, an officer may properly run a computer check on a motorist's license as a routine part of a traffic stop. We agree with the State's second argument.

■ The fourth amendment protects citizens from unreasonable searches and seizures. U.S. Const., amend. IV. Routine traffic stops, such as the one at issue in the case at bar, constitute "seizures" within the meaning of the fourth amendment. *People v. Gonzalez*, 204 Ill. 2d 220, 225, 789 N.E.2d 260, 264 (2003). Traffic stops are analyzed within the framework of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *Terry* requires a two-part inquiry: (1) the stop must be justified at its inception and (2) it must be reasonably related in scope to the circumstances that justified the stop in the first place. *Gonzalez*, 204 Ill. 2d at 228, 789 N.E.2d at 266, relying on *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. There is no dispute that the stop here at issue was justified at its inception. The only issue is whether Officer Murbarger exceeded the permissible scope of the detention.

■ When a police officer sees a driver commit a traffic violation, he is justified in detaining the driver briefly. The officer may inquire about the circumstances of the observed violation. *People v. Cox*, 202 Ill. 2d 462, 468, 782 N.E.2d 275, 279 (2002). Under most circumstances, the officer may also run a quick warrant check of the driver's license. *People v. Branch*, 295 Ill. App. 3d 110, 113, 692 N.E.2d 398, 401 (1998). However, the detention must " 'last no longer than is necessary to effectuate the purpose of the stop.' " *Cox*, 202 Ill. 2d at 467, 782 N.E.2d at 279, quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion).

■ If the officer detains the driver for longer than necessary to effectuate the purpose of the stop, evidence obtained as a result must be excluded. See *United States v. Green*, 111 F.3d 515, 520-21 (7th Cir. 1997) (discussing the application of the exclusionary rule in the context of a traffic stop). A motion to suppress evidence generally presents a mixed question of law and fact. *Cox*, 202 Ill. 2d at 465-66, 782 N.E.2d at 278. We will give the trial court's factual findings great deference and will not set them aside unless they are manifestly erroneous. *People v. Koutsakis*, 272 Ill. App. 3d 159, 162, 649 N.E.2d 605, 607

(1995). However, we review the trial court's ultimate determination to deny or grant the motion *de novo. Cox*, 202 Ill. 2d at 466, 782 N.E.2d at 278.

The State appears to contend that the trial court erred in finding that Officer Murbarger had determined that the defendant's registration was valid before checking his license through the computer. In fact, the State's argument suggests the trial court erred in accepting Officer Murbarger's testimony that he confirmed the validity of the defendant's registration at all during the stop. We must reject this argument.

The State claims, "[T]he officer's confirmation of the validity of the registration is somewhat illusory, despite the officer's testimony, because at best[,] all the officer knew at the outset, having run the plates and discovering that they were registered to a different vehicle, was that there was a *contradiction* in his observations that he was entitled to investigate." (Emphasis in original.) See 625 ILCS 5/3— 703 (West 2000) (prohibiting the improper use of evidence of registration). In so arguing, the State asks us to assess the officer's credibility and reject that portion of his testimony that was favorable to the defendant. We decline to do so. Officer Murbarger testified that he had concluded that the discrepancy between the results of the computer search and the valid registration that the defendant showed him was likely the result of an error on the part of the Secretary of State. The trial judge was in a better position than we are to assess the witness's credibility. *Koutsakis*, 272 Ill. App. 3d at 162, 649 N.E.2d at 607, citing *People v. Melock*, 149 Ill. 2d 423, 432, 599 N.E.2d 941, 944 (1992).

■ Likewise, we do not think the court's finding that Officer Murbarger had determined that the defendant's registration was valid *prior to* running a computer check on his license was against the manifest weight of the evidence. Specifically, the State argues, "The trial court chose to credit the sequence found in the officer's report because it was written contemporaneously with the traffic stop, even though Murbarger refused to confirm that his report was necessarily a precise chronological recitation of his actions." We find no error. The officer testified that he could not recall the exact order in which he inspected the documents that the defendant had handed him. Defense counsel confronted him with his report of the incident, which first indicated that the registration card was valid and then noted that Officer Murbarger checked the defendant's license number. The report itself was not admitted into evidence and is not a part of the record on appeal. Thus, we do not know the exact wording. However, defense counsel asked Officer Murbarger if his report said that he had checked to see if the registration was valid first, to which the officer replied,

"Correct." He also admitted that the report had been written contemporaneously with the stop and was accurate. When asked by the prosecutor if he could tell the court "whether or not this is an exact chronological report of what [he] did in exact chronological order," he replied that he could not. This does not amount to a statement that the admittedly accurate report was written in anything other than chronological order. Moreover, the conclusion that the report was an accurate, chronological representation of events was supported by other testimony. Specifically, Officer Murbarger testified: "Once I was in my patrol vehicle, I ran his driver's license through dispatch, and they gave me a response back that he was revoked. I looked at his other information while I was waiting for the response. *Which I knew he did have a valid registration card, and possibly [it] was a problem with the [Secretary of State]. I mean, I don't know anything about that.*" (Emphasis added.) We conclude that the evidence supports the trial court's findings that Officer Murbarger had determined that the defendant's registration was valid and that he had done so prior to checking the defendant's driver's license.

The State contends, however, that Officer Murbarger was justified in checking the defendant's license even after determining that the registration was valid because (1) the fact that the registration sticker was obscured by dust and dirt was itself a violation of the Illinois Vehicle Code (625 ILCS 5/3—413(b) (West 2000) (requiring, among other things, that registration stickers be "clearly visible" at all times)), which could have provided an independent justification for the stop, and (2) Officer Murbarger requested all three documents simultaneously and checked the license as a routine procedure pursuant to a traffic stop that the defendant concedes was valid at its inception. Because we agree with the State's second contention, we need not address the argument that the condition of the sticker itself would justify continuing the stop.

The defendant cites *People v. Arteaga*, 274 Ill. App. 3d 781, 655 N.E.2d 290 (1995), in support of his contention that Officer Murbarger exceeded the permissible scope of the stop by checking the validity of his documents on the computer. Although *Arteaga* is factually similar to the case at bar, we find it distinguishable. There, as here, an officer saw a car with no visible registration. He pulled the driver over. *Arteaga*, 274 Ill. App. 3d at 781, 655 N.E.2d at 290. As he approached the car on foot, he saw a valid temporary registration card inside the car's rear window. He had been unable to see the temporary registration because it was dark and the window was tinted. *Arteaga*, 274 Ill. App. 3d at 782, 655 N.E.2d at 290. The officer nevertheless requested the driver's license, checked it through the computer, and discovered that

it had been revoked. *Arteaga*, 274 Ill. App. 3d at 782, 655 N.E.2d at 290-91. The Third District affirmed the trial court's order granting Arteaga's motion to suppress, reasoning that the officer had exceeded the "underlying justification for the initial stop," by detaining the defendant to run a computer check of his license after he had established that the car was validly registered. *Arteaga*, 274 Ill. App. 3d at 783, 655 N.E.2d at 291-92; see also *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994) (once the state trooper who stopped a vehicle only for the purpose of determining the validity of its temporary registration sticker discovered the sticker was valid, the further detention of the driver was impermissible).

The State argues, and we agree, that *Arteaga* is distinguishable because the officer there satisfied the purpose of the stop before he even approached the driver. In the instant case, by contrast, Officer Murbarger could not determine that the defendant's registration card was valid without looking at the card and questioning the defendant about it. In essence, the difference is that Officer Murbarger had to conduct an investigation once he made the stop, while the officer in *Arteaga* did not.

This distinction is significant because the touchstone of fourth amendment analysis is reasonableness. *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001). As the Illinois Supreme Court recently stated, striking "the proper balance between the government's interest in effective law enforcement and the individual's interest in being free from arbitrary governmental intrusions *** lies at the core of the concept of 'reasonableness.' " *Gonzalez*, 204 Ill. 2d at 233, 789 N.E.2d at 268. In the instant case, the law enforcement purpose of requesting to see a valid driver's license cannot be served without a computer check. As Officer Murbarger testified, the only way to determine the validity of a driver's license is to run a computer check on it. By contrast, the impact such a check has on a citizen's right to privacy is insubstantial. A motorist who is pulled over for an investigatory traffic stop may reasonably expect to be asked for a driver's license and proof of registration and insurance. Likewise, the motorist can expect that the officer will check the validity of these documents on a computer. *Holt*, 264 F.3d at 1220. Thus, both Illinois courts and federal courts have repeatedly held that an officer may properly run a computer check on a motorist's driver's license, registration, or insurance card. *Branch*, 295 Ill. App. 3d at 113, 692 N.E.2d at 401; *Koutsakis*, 272 Ill. App. 3d at 164, 649 N.E.2d at 609; *People v. Clodfelder*, 172 Ill. App. 3d 1030, 1035, 527 N.E.2d 632, 635 (1988); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993); *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988).

The general authority to run a computer check on a driver's license is not absolute, however. In *Clodfelder*, for example, the court stated, "[R]etention *** of the person stopped long enough to make a warrant check has usually been permissible." *Clodfelder*, 172 Ill. App. 3d at 1035, 527 N.E.2d at 635. The court then compared the facts before it to those precedents holding that a computer check was valid before concluding that such a check was reasonable under the circumstances of the case. *Clodfelder*, 172 Ill. App. 3d at 1035, 527 N.E.2d at 635. Similarly, in *Branch*, the court stated that the United States Supreme Court has " 'consistently eschewed bright-line rules' " in the fourth amendment context. *Branch*, 295 Ill. App. 3d at 113, 692 N.E.2d at 401, quoting *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996). Rather than adopt a *per se* rule of any kind, the court stated, "[W]e adhere to the rule *** that permits an officer to run a warrant check if, under the circumstances, to do so is reasonable." *Branch*, 295 Ill. App. 3d at 113, 692 N.E.2d at 401. While it may be unreasonable for a motorist to expect an officer to run a computer check on his driver's license where, as in *Arteaga*, he realizes as soon as he stops the vehicle that there is no need for further investigation, it is entirely reasonable to expect such a minor intrusion where the officer conducts even a cursory investigation such as the one involved in the instant case. Because the license check is reasonable, it does not violate the fourth amendment, and the results should not have been suppressed.

## III. CONCLUSION

For the foregoing reasons, we reverse the order of the trial court suppressing the evidence and remand for a new trial.

Reversed.

MAAG, J., concurs.

JUSTICE WELCH, specially concurring:

I write separately merely for clarification purposes. The traffic stop at issue in this case is not a *"Terry* stop." *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968). This case concerns a lawful probable cause stop for a traffic violation. 625 ILCS 5/3—413(b) (West 2000) (regarding the obstructed visibility of a registration plate). However, *Terry* standards are still applied to determine the reasonableness of the continuing detention. See, *e.g.*, *People v. Gonzalez*, 204 Ill. 2d 220, 228, 789 N.E.2d 260, 266 (2003) (*"Terry* principles apply even in the presence of probable cause"). In

other words, the reasonableness analysis does not apply to the initial stop but does apply to the continuing stop. In all other respects, I concur with the majority.