THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE L. GORDON, a/k/a Derrick Williams, Defendant-Appellant.

Second District   No. 2—98—0093

Opinion filed January 28, 2000.

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, and Marianne Hannigan, of Belleville, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Barbara A. Preiner, of Deitsch & Preiner, of Wheaton, for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, defendant, Steve L. Gordon, a/k/a Derrick Williams, was found guilty of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)). Defendant timely appeals and asserts that the circuit court erred when it denied his motion to quash his arrest and suppress evidence. Defendant contends that the trial court erred (1) by ruling that his arrest was valid if the police acted in good faith when they relied on an arrest warrant for someone else but mistakenly arrested defendant; and (2) by determining that the police acted in good faith. We affirm.

On August 6, 1997, defendant was arrested and charged with several offenses, including unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 1998)). Prior to trial, defendant filed a motion to quash his arrest and suppress evidence. Following a hearing on the matter, the trial court denied the motion.

The case went to trial on the charges of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The trial court found defendant guilty of unlawful possession of a controlled substance but not guilty of unlawful possession of a controlled substance with intent to deliver. The court

initially imposed a 5-year sentence on defendant but reduced the sentence to 4½ years pursuant to defendant's motion to reconsider sentence. Defendant's timely appeal followed. On appeal, defendant raises issues related only to the trial court's denial of his motion to quash his arrest and suppress evidence.

At the hearing on defendant's motion to quash his arrest, the parties stipulated to the following facts. At the time of defendant's arrest, there was an outstanding warrant for the arrest of a person named Darrick Williams whose date of birth was shown on the face of the warrant as December 21, 1967; the address shown on the warrant was 734 Broadway, apartment 1, North Chicago; the subject of the warrant was a black male; a North Chicago police officer would testify that the subject of the warrant was 5 feet 11 inches tall and weighed 220 pounds; it was later determined that defendant was not the subject of the warrant; and, at the time of defendant's arrest and search, there was no outstanding warrant for his arrest or for the search of his person.

Following the stipulations, the State called Waukegan police officer Andrew Hewett as a witness. Hewett testified that he was on duty at about 2:45 a.m. on August 6, 1997, when he was called to the Thriftlodge Motel in Waukegan. Hewett was accompanied by Officer Walles. When Hewitt arrived at the motel, he spoke to the night manager, Mr. Edmaiston. Edmaiston told Hewett that he had been told by some residents of the motel that the person registered in room 419 had offered to sell them drugs. Edmaiston identified the person registered in room 419 as Derrick Williams. Edmaiston wanted the police to remove Derrick Williams from the premises.

Hewett further testified that he, Edmaiston, and Walles then went to room 419. Edmaiston knocked on the door. Defendant opened the door and stood in the doorway while Hewett, Edmaiston, and Walles remained in the hall. Defendant told Hewett that his name was Derrick Williams. Defendant produced a State of Illinois identification card. Hewett testified that the name on the identification card was Derrick Williams, that the picture on the identification card was a picture of defendant, and that the date of birth on the card was December 21, 1968.

After defendant produced the identification card and identified himself as Derrick Williams, Hewett radioed police headquarters and asked the dispatcher to check for warrants on a subject. Hewett testified that he told the dispatcher that the subject's name was Derrick Williams, that the subject's date of birth was December 21, 1968, and that the subject was a black male. Hewett testified that the dispatcher stated that there was "an active warrant for a Derrick Williams with a date of birth of 12/21/1967, male black."

Hewett then advised defendant that there was an active warrant for his arrest. Hewett testified that defendant responded by stating that he had previously attempted to surrender himself to the Lake County sheriff's police for the warrant in question, but the police had determined that he was not the subject of the warrant. Hewett told defendant that he had no proof of this and would therefore place defendant in custody and "take him to the county jail and see if they had a photograph of him and we could determine for sure if he was the subject [of the warrant] or not."

Hewett testified that when the dispatcher gave him the information regarding the warrant he believed that defendant was the subject of the warrant. He believed this because "the name and birth date comparison was similar to indicate that he was the subject. The only difference was one year on the birth date."

Hewett testified that he began to reach for defendant to take him into custody and that defendant then attempted to close the door and run into the motel room. When defendant did that, Hewett pushed the door open, took defendant to the floor, and placed him in custody.

Hewett next placed handcuffs on defendant and searched him. Hewett testified that he reached into each front pocket of the jeans that defendant was wearing and in each pocket found a plastic bag that contained several smaller bags that contained a hard, rock-like substance. Hewett testified that in his search he also found a smaller bag containing cannabis and drug paraphernalia.

On cross-examination, Hewett initially answered that Edmaiston had told him that the person registered in room 419 was "Derrick P. Williams." Hewett later modified his answer and stated that he could not recall whether Edmaiston used the person's middle initial. Hewett acknowledged that the police report he filed stated that Edmaiston checked the registry and told him that the person registered in room 419 was named "Derrick P. Williams." Hewett also acknowledged that the identification card that defendant showed him bore the name of "Derrick P. Williams." Hewett could not recall whether the identification card contained an address of 3940 West 21st Street in Chicago or a social security number (SSN). Hewett conceded that he did not give the dispatcher the SSN shown on the identification card. Hewett did not recall whether he asked the dispatcher if the warrant contained an address. Hewett did not recall whether defendant told him that the warrant could not be for him because he had recently been released from a boot camp. Hewett conceded that his police report did not identify the specific location where he found contraband.

Defendant testified at the hearing on his motion to quash his arrest that his name is "Derrick Paul Williams." Defendant also testi-

fied that the identification card he gave Hewett contained the name "Derrick P. Williams," his SSN, and his address of 3940 West 21st Street in Chicago.

Defendant's further testimony included the following. After defendant gave Hewett the identification information, Hewett told defendant that he was under arrest for a domestic battery warrant. Defendant laughed at that and stated that he had just gotten out of a Department of Corrections boot camp and he therefore knew there was no warrant for him because he was on work release. Defendant denied telling Hewett that he had tried to turn himself in on the warrant.

Defendant testified that his height is approximately 5 feet 9 inches or 5 feet 10 inches and his weight is 185 pounds. His height and weight were about the same when he was arrested.

Defendant further testified that, after he told Hewett that the warrant was not for him, Hewett radioed for a warrant check for a Derrick Williams and gave the dispatcher defendant's SSN and date of birth. Defendant further testified that the dispatcher told Hewett "subject clears." According to defendant, after the dispatcher made that statement, Walles said, "I hate drug dealers," and Hewett said "I'm going in that room regardless."

Defendant testified that when he was arrested he was wearing red shorts, no socks, brown sandals, no underwear, and a black Chicago Bulls T-shirt. Defendant denied that any of these items had pockets. After his arrest, defendant was taken to the Waukegan police department. At the time of the hearing, defendant had been in custody in the Lake County jail since his arrest.

On cross-examination defendant acknowledged that in the past he used various names and birth dates. Defendant testified that he was released from the boot camp in question in February 1997. Defendant stated that as soon as he opened the door Hewett told him that he was under arrest for domestic battery. He also reiterated that he heard the dispatcher say "subject clears" after he gave Hewett his identification card.

In rebuttal testimony, Hewett testified that after defendant's arrest Walles transported defendant to the police station, that defendant was wearing the same pants that he was wearing when Hewett searched him, and that those pants were jeans. Hewett also testified that when he last saw defendant at the police station defendant was wearing the same jeans.

After Hewett's rebuttal testimony, the parties stipulated that certain items of clothing were taken from defendant and placed in custody when defendant was booked into the Lake County jail. The

items were a pair of red shorts with no pockets, a pair of sandals, two belts, and a black Bulls T-shirt.

Following the hearing, the trial court denied defendant's motion to quash his arrest and suppress evidence. In announcing its ruling, the trial court commented that there were "striking similarities" between the information on the warrant and defendant's race, sex, name, and date of birth. The trial court stated that it considered the items of height, weight, and social security number to be irrelevant because there was no information as to those items on the warrant.

The court also stated that it considered several credibility issues. The court indicated that it found defendant's testimony that he heard the dispatcher say "subject clears" not credible because the dispatcher's statement was said to have been made after the dispatcher was given defendant's SSN, but there was no SSN on the warrant. The court was not persuaded by defendant's testimony that at the time of his arrest he was wearing shorts without pockets and was not wearing jeans. The court also found that defendant's statement that he had just been released from boot camp was dubious.

On appeal, defendant first contends that the trial court erred in denying his motion to quash his arrest and suppress evidence because evidence obtained in a search incident to an arrest based on a mistaken belief that he was the subject of an arrest warrant, even if made in good faith, must be excluded. Defendant asserts that no Illinois court has determined whether a good-faith exception applies to allow the use of evidence against an arrestee where a valid arrest warrant is served on the wrong person and a subsequent search reveals contraband. Defendant urges us to follow *Grant v. State*, 152 Ga. App. 258, 262 S.E.2d 553 (1979).

We initially note our standard of review. In reviewing a ruling on a motion to suppress, where the ruling involves factual determinations and credibility assessments it will be reversed on appeal only when the ruling is manifestly erroneous. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). Where there are no factual or credibility disputes, *de novo* review is appropriate. *Buss*, 187 Ill. 2d at 204-05.

■ In this case, whether an arrest involving mistaken identity should be deemed valid if the mistake was made in good faith is a legal question that does not involve factual or credibility determinations. We therefore review the question *de novo*.

Defendant urges us to follow *Grant*. In *Grant*, the police arrested the defendant based on a warrant for another person, conducted a search of the defendant's person, and discovered a small amount of marijuana. The Georgia appellate court reversed the defendant's conviction. The court stated that, even though a police officer acts in

good faith in arresting a person other than the person named in a warrant, the warrant will not justify the action. *Grant*, 152 Ga. App. 258, 262 S.E.2d 553.

The State responds that we should follow the United States Supreme Court's opinion in *Hill v. California*, 401 U.S. 797, 28 L. Ed. 2d 484, 91 S. Ct. 1106 (1971). In *Hill*, the police had probable cause to arrest a person named Hill but mistakenly arrested another person, Miller. At the time of the arrest, Miller was at Hill's apartment and fit Hill's description. The Court addressed the questions of whether Miller's arrest was valid and whether a search of Hill's apartment pursuant to Miller's arrest was also valid. As to the arrest, the Court stated:

> "Based on our own examination of the record, we find no reason to disturb either the findings of the California courts that the police had probable cause to arrest Hill and that the arresting officers had a reasonable, good-faith belief that the arrestee Miller was in fact Hill, or the conclusion that '[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.' [Citation.]" *Hill*, 401 U.S. at 802, 28 L. Ed. 2d at 489, 91 S. Ct. at 1110.

As to the search, the Court stated that "the police were entitled to do what the law would have allowed them to do if Miller had in fact been Hill." *Hill* 401 U.S. at 804, 28 L. Ed. 2d at 490, 91 S. Ct. at 1111.

■ Our research reveals that the majority of cases that have cited *Hill* have followed *Hill* when addressing factual patterns involving an arrest based on mistaken identity where the police had probable cause to arrest someone else and acted in reasonable good faith. A recent example is *United States v. Marshall*, 79 F.3d 68 (7th Cir. 1996). In *Marshall*, the police had a valid arrest warrant for a person named Beasley and, based on information from an informant, mistakenly arrested a person named Marshall thinking he was Beasley. A search of Marshall's person revealed that he was carrying a loaded gun. After the denial of his motion to suppress the evidence on the ground that the search was illegal, Marshall pleaded guilty to a federal gun charge. Marshall later appealed and raised a single issue, whether the gun seized incident to his arrest should have been suppressed.

Citing *Hill*, the *Marshall* court stated:

> "In circumstances where the police mistake a person for someone else they seek to validly arrest, the arrest is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought." *Marshall*, 79 F.3d at 69.

The court also stated that the arrest warrant gave the police a sufficient basis to arrest Beasley and therefore the critical issue before it was whether the police were reasonable in thinking that Marshall was Beasley. The court then determined that the police actions were reasonable and affirmed Marshall's conviction.

Our research has not revealed an Illinois case that is precisely on point in terms of relying on *Hill* in a definite case of mistaken identity, namely, a case involving an arrest pursuant to a valid arrest warrant, or other basis of probable cause, of a person who was not the person being sought. However, our research has revealed several Illinois cases, including one supreme court case, that have cited *Hill* with approval in closely related contexts.

In *People v. Gwin*, 49 Ill. 2d 255, 258-59 (1971), our supreme court addressed the question of the validity of a search made subsequent to an arrest. Based on a witness's description, the police had probable cause to arrest a suspected burglar. The police arrested Gwin, who fit the description, near the scene of the burglary. However, even though Gwin was linked to items stolen in the burglary, the complaining witness told the police that Gwin was not the man he had seen in his apartment. Citing *Hill*, the court stated that the *possible* mistaken identity in arresting Gwin was of no importance because "where police have probable cause to arrest one person, and they reasonably mistake another for him and make an arrest, the validity of the arrest is not affected by the mistake." *Gwin*, 49 Ill. 2d at 258-59.

In *People v. Safunwa*, 299 Ill. App. 3d 707 (1998), this court cited *Hill* with approval in the context of a traffic stop involving a mistake in identification. The court concluded that officers had a justifiable basis for making the traffic stop where they reasonably believed that the driver of the car they stopped was the subject of an arrest warrant. In support of its conclusion, the court cited *Hill* for the proposition that sufficient probability, rather than certainty, is the touchstone of reasonableness under the fourth amendment. The court noted parenthetically in the citation that "when officers have probable cause to arrest one party and they reasonably mistake a second party for the first party, then arrest of the second party is valid for purposes of fourth amendment search and seizure analysis." *Safunwa*, 299 Ill. App. 3d at 711.

In *People v. Cunningham*, 130 Ill. App. 3d 254 (1984), the Appellate Court, First District, cited *Hill* with approval in a case involving a determination that it was not necessary to suppress evidence on the ground that it was the fruit of an illegal arrest. After making that determination, the court stated that it also believed that the arrest was legal because it was an arrest made pursuant to a valid arrest warrant

of a person the officers could reasonably have believed was the subject of the warrant. Citing *Hill*, the court stated "[i]t is established that where police are authorized to make an arrest of one person and reasonably mistake another for him, the validity of the arrest is not affected by the mistake." *Cunningham*, 130 Ill. App. 3d at 262.

We believe that these Illinois cases provide compelling authority to follow *Hill* where it is applicable. *Hill* is certainly applicable in this case, and we will therefore follow it.

Defendant's reliance on *Grant* is misplaced and does not persuade us to reject *Hill*. *Grant* did not mention *Hill* even though *Hill* was decided well before *Grant* was decided.

Nor do we find convincing defendant's arguments that the Illinois Constitution prohibits us from following *Hill*. Defendant correctly notes that our supreme court has held that the Illinois Constitution may provide broader protections than those afforded by the United States Constitution and therefore Illinois courts are not bound to follow in lockstep decisions based on the United States Constitution. See, *e.g., People v. Krueger*, 175 Ill. 2d 60 (1996) (exclusionary rule in Illinois Constitution (Ill. Const. 1970, art. I, § 6) provides broader protections than United States Constitution with respect to good-faith use of warrant based on statute subsequently declared unconstitutional). However, defendant has not shown that any of the concerns expressed by our supreme court in *Krueger* as reasons for not following the lockstep doctrine are concerns here. Defendant has not shown that *Hill* was somehow fundamentally flawed. In *Hill*, the United States Supreme Court justices were unanimous in their opinion that the arrest of an individual because of a reasonable mistake in identity based on probable cause to arrest someone else was a valid arrest. Nor has defendant shown that the decision in *Hill* violates some well-settled Illinois constitutional law.

Having determined that we should follow *Hill*, we next address defendant's contention that the police did not act in good faith in this case. By its ruling, the trial court implicitly decided that the officers acted in reasonable good faith when they mistakenly arrested defendant on the basis of a warrant for someone else. Because the ruling involves factual and credibility determinations, we will not reverse the ruling unless it was manifestly erroneous. *Buss*, 187 Ill. 2d at 204.

■ To determine whether the fourth amendment was violated by the mistaken arrest of a person pursuant to a valid warrant for another person, a court should determine whether the arrest was reasonable under the circumstances, bearing in mind that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill*, 401 U.S. at 804, 28 L. Ed. 2d at 490, 91 S. Ct. at 1111.

■ The parties agree that the proper standard to determine whether an officer's actions were in reasonable good faith in the context of an arrest based on mistaken identity was stated in *Sanders v. United States*, 339 A.2d 373 (D.C. App. 1975). In *Sanders*, the court stated:

> "[T]he seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. Should doubt as to the correct identity of the subject of [the] warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual." *Sanders*, 339 A.2d at 379.

Defendant argues that the facts in this case do not rise to the level of good faith under this standard. We disagree.

■ It is undisputed that after defendant produced his identification card Hewett radioed headquarters to determine whether there was an outstanding warrant for defendant. Hewett testified that the dispatcher told him that there was an active warrant for a person whose name, sex, race, and date of birth either matched or nearly matched the information on the warrant.

Defendant argues that when defendant indicated to Hewett that the warrant was not for him Hewett should have again radioed the dispatcher and sought additional information. We are not persuaded by this argument. We believe that the information Hewett received when he called the dispatcher was a sufficient basis for Hewett to take the actions that he took. Hewett advised defendant that he would be taken to police headquarters to determine whether the warrant was for him. Given the circumstances of this case, we cannot say that the trial court's determination that Hewett acted in reasonable good faith was manifestly erroneous.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.