# Illinois Official Reports

## Appellate Court

---

## *People v. Hill*, 2019 IL App (4th) 180041

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES D. HILL, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-18-0041 |
| Filed | January 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 17-CF-896; the Hon. Thomas E. Griffith Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, John M. McCarthy, and Zachary A. Rosen, of State Appellate Defender's Office, of Springfield, for appellee. |
| Panel | JUSTICE DeARMOND delivered the judgment of the court, with opinion.<br>Presiding Justice Holder White concurred in the judgment and opinion.<br>Justice Turner specially concurred, with opinion. |

**OPINION**

¶ 1　　In June 2017, the State charged defendant, Charles D. Hill, with one count of unlawful possession of a substance containing less than 15 grams of cocaine. In October 2017, defendant filed a motion to suppress evidence of cocaine located in his car, and the trial court granted the motion.

¶ 2　　On appeal, the State argues the trial court erred by granting defendant's motion to suppress evidence. We reverse and remand.

## I. BACKGROUND

¶ 4　　In May 2017, around 10 a.m., Officer Robert Baker was parked in his squad car on west Route 36 near the 2200 block in Decatur when defendant's Chevrolet Monte Carlo quickly decelerated to well below the speed limit, causing traffic to back up. As the car drove by the officer, he noticed the passenger was reclined in the car with his head mostly obstructed by the side panel, where the seatbelt is attached, referred to by the officer as the "B panel." Having observed the "drastic speed reduction" and the passenger "leaning back very low in the seat," Officer Baker drove from his parked location in order to get a better look at the passenger. He testified he was aware from his experience as a police officer that people wanted on warrants or concerned about rival gang members frequently ride in the same manner he was observing in order to remain concealed. When he pulled up next to the vehicle, he was able to see the hair, face, skin tone, and apparent build of the passenger and believed him to be Duane Lee, a person he knew to be wanted on a traffic warrant. While waiting for a backup vehicle to arrive on the scene, the officer followed the vehicle. He traveled approximately 30 blocks from when he first saw the car until it was ultimately stopped. It took some time to catch up to the car from his parked position, and believing the passenger to be Duane Lee, he wanted another police vehicle in the vicinity before confronting Lee. In addition, he noted that once he activated his lights to effectuate the stop, it took several blocks for the car to actually come to a stop. In his experience, when this occurs during a traffic stop, the occupants of the vehicle may be concealing or attempting to conceal or destroy contraband. In such instances, he said, one of the most serious concerns is whether an occupant is seeking to retrieve a weapon. Officer Baker testified that all of these facts were being considered by him as he sought to effectuate the traffic stop.

¶ 5　　Once a backup squad car was near, Officer Baker initiated a stop of defendant's vehicle. Approaching from the passenger side, he asked the passenger to identify himself and step out of the vehicle. Officer Baker, immediately upon making contact with the passenger, smelled the odor of "raw" cannabis. Upon being asked by defendant, the driver, what defendant did wrong, on the in-car video stipulated into evidence, Officer Baker said, "I thought [the passenger] was wanted, is why I stopped you, that's why I stopped you." Directing his attention to the passenger, Officer Baker stated, "[A]ctually, to tell you the truth, I thought you were somebody else." Within a matter of approximately 15 seconds, Officer Baker told the occupants he could smell raw cannabis in the car and said he observed a "bud" in the backseat, stating, "I'll show that to you in a minute." After another police car arrived, defendant was asked to exit the vehicle and, after being patted down, to sit on the curb next to the car. A search of the vehicle produced an unspecified amount of cannabis, described by Officer Baker in response to counsel's question as being "much less than a pound or an ounce." In addition,

the officers found "a small rock that tested positive for crack cocaine" under the driver's seat. Again, the specific amount was not identified. Defendant was arrested while the passenger, once identified as someone other than the individual wanted on a warrant, was permitted to walk away.

¶ 6 The State charged defendant by information with unlawful possession of a substance containing less than 15 grams of cocaine. 720 ILCS 570/402(c) (West 2016). In October 2017, defendant filed a motion to suppress evidence of the cocaine found in the car, arguing the officer did not have reasonable suspicion for the stop and, alternatively, probable cause to search defendant's car. The trial court conducted a hearing on the motion, and Officer Baker was the only witness called to testify. At the hearing, Officer Baker said he was able to see the entire left side of the passenger's head and neck when he pulled up alongside defendant's car on the driver's side. He believed the person to be Lee based on the hair, face, skin tone, and apparent build of the person he observed in defendant's vehicle. Officer Baker was familiar with Lee from previous observations of him on the street throughout his time as a police officer, as well as his practice of keeping current on persons wanted on warrants. He explained he did this by regularly reviewing the department's records of wanted people in Decatur and then viewing the most recent photos the Decatur Police Department had on those individuals.

¶ 7 During his testimony, the in-car video was admitted and shown to the court. Based on the testimony and the video, the trial court granted the motion to suppress evidence. In its finding, the court concluded there was no bad faith on the part of the officer in stopping the vehicle and noted how the photographs admitted of both the passenger and Lee were "actually quite similar." The trial court found that, when the officer walked up to the vehicle after effectuating the stop, he "wasn't really certain who was seated in the passenger's seat, *i.e.*, he was not certain it was Mr. Lee." Further, the court found that, although there was more than a vague similarity between the passenger and Lee, there was "no other corroborating evidence." The court went on to note that, had it found the stop valid, the subsequent search of the vehicle would have been justified. The court granted the motion to suppress as to any evidence seized as a result of the traffic stop. The State filed a certificate of impairment and appealed pursuant to Illinois Supreme Court Rule 604(a) (eff. July, 1, 2017).

¶ 8 This appeal followed.

¶ 9 II. ANALYSIS

¶ 10 A. Traffic Stop

¶ 11 The State argues the trial court erred by granting defendant's motion to suppress evidence obtained pursuant to the stop and search of defendant's car. We agree.

¶ 12 "The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***.' " *Terry v. Ohio*, 392 U.S. 1, 8 (1968). The fourth amendment of the United States Constitution focuses on "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 19. "The law is well settled that stopping a vehicle and detaining its occupants constitute a 'seizure' within the meaning of the fourth amendment." *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092. "[A] police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime." *Timmsen*, 2016 IL 118181, ¶ 9. The standard for a stop is "reasonable, articulable suspicion." *Illinois v.*

- 3 -

*Wardlow*, 528 U.S. 119, 123 (2000). "Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry*, 392 U.S. at 27). Although clearly "seizures," traffic stops are more like *Terry* investigative detentions than formal arrests and therefore may be reasonable if initially justified and reasonably related in scope to the circumstances that justified the interference in the first place. *People v. Cummings*, 2014 IL 115769, ¶ 15, 46 N.E.3d 248.

¶ 13    We apply an objective standard and consider whether the facts available to the officer at the moment of the seizure or search would "warrant a man of reasonable caution in the belief" that the action was appropriate, considering the totality of the circumstances. (Internal quotation marks omitted.) *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry*, 392 U.S. at 21-22). "[R]easonable suspicion determinations must be made on commonsense judgments and inferences about human behavior." *Timmsen*, 2016 IL 118181, ¶ 14. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). In determining if there was reasonable suspicion for the stop, there is no bright-line rule, but instead the court is to consider the "totality of the circumstances of each case." *Timmsen*, 2016 IL 118181, ¶ 18.

¶ 14    A motion to suppress requires a two-part standard of review. *Timmsen*, 2016 IL 118181, ¶ 11. As to the factual findings, the reviewing court will uphold the trial court's factual findings unless they are against the manifest weight of the evidence. *People v. Barker*, 369 Ill. App. 3d 670, 673, 867 N.E.2d 1021, 1023 (2007). This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).

¶ 15    However, the trial court's ultimate legal conclusion as to whether to suppress the evidence is reviewed *de novo*. *Timmsen*, 2016 IL 118181, ¶ 11. "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." (Internal quotation marks omitted.) *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 16, 39 N.E.3d 318 (quoting *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006)); see also *People v. Hackett*, 2012 IL 111781, ¶ 18, 971 N.E.2d 1058.

¶ 16    This is consistent with the standards set forth by the federal courts. In *Ornelas v. United States*, 517 U.S. 690, 699 (1996), the Supreme Court said:

> "We therefore hold that as a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

¶ 17    Under the normal *Terry*-stop analysis, courts look to the " 'reasonable, articulable suspicion' " that a violation of the law has occurred. *People v. Gaytan*, 2015 IL 116223, ¶ 20, 32 N.E.3d 641. In *Gaytan*, the basis for the stop was a minor traffic violation for an apparent partially obstructed license plate. Explaining what "reasonable, articulable suspicion" meant, our supreme court stated that the police officer effectuating a traffic stop "must have a particularized and objective basis for suspecting the particular person stopped was violating the law." (Internal quotation marks omitted.) *Gaytan*, 2015 IL 116223 ¶ 20. The officer's

conduct is judged by an objective standard, which analyzes whether the facts available to the officer at the moment of the stop justify the action taken. *Hackett*, 2012 IL 111781, ¶ 29.

¶ 18    The most significant distinction in this case is, however, that there is no need for the officer under these circumstances to be required to analyze and justify the stop based on any suspicion of unlawful behavior. We do not have to surmise whether the actions of the vehicle or occupants were objectively suspicious. In fact, the defendant was apparently doing nothing illegal, other than perhaps rapidly decelerating once the marked police car was observed. This is because the basis for the stop was the result of an objective fact completely removed from the activity; *i.e.*, the outstanding arrest warrant for a person whose appearance was found by the trial court to be "actually quite similar" to the passenger. In *People v. Safunwa*, 299 Ill. App. 3d 707, 710, 701 N.E.2d 1202, 1204 (1998), relied upon by both defendant and the State, albeit for different reasons, the Second District found the trial court made a specific finding, upon close inspection, that the defendant did not resemble the photograph of the fugitive police thought was in the vehicle they stopped. As a result, they held, absent a finding the conclusion was erroneous, they were bound thereby. *Safunwa*, 299 Ill. App. 3d at 711. We have the identical situation in reverse. The trial court had already determined the appearance of the passenger and suspect wanted on a warrant were "quite similar." We should likewise defer to the trial court. The behavior observed by Officer Baker both before and after activating his lights serves only to buttress the reasonableness of his suspicion. Although the actions of the driver and reclining position of the passenger made them noteworthy to Officer Baker, had the passenger been Duane Lee, that fact alone would have justified the stop. The trial court also noted the officer was not acting in bad faith when he stopped defendant's vehicle. In other words, the officer reasonably believed the passenger to be Duane Lee. How certain does he have to be to execute a brief traffic stop? In *Safunwa*, in spite of the trial court's finding that upon close inspection the defendant did not look like the person wanted on the warrant, the appellate court found the officers reasonably believed defendant was the person wanted on a warrant based upon the similarity in height, weight, age, and similarity of mustache and hair style. *Safunwa*, 299 Ill. App. 3d at 711. The court found the officers were justified in making the stop and requesting identification. "Sufficient probability, rather than certainty, is the touchstone of reasonableness under the fourth amendment." *Safunwa*, 299 Ill. App. 3d at 711 (citing *Hill v. California*, 401 U.S. 797, 803-04 (1971)).

¶ 19    In *Cummings*, 2016 IL 115769, a traffic stop based on an outstanding warrant for the female owner of the vehicle, although initially valid, was rendered in violation of the fourth amendment once the officer approached the van and observed the driver to be a man. In explaining the rationale for its ruling, the supreme court noted that although before the stop the officer had determined the registration he initially believed to be expired was, in fact, valid, since he learned of the outstanding arrest warrant for the female owner and could not determine whether the driver was a female, the officer had a "reasonable suspicion" that the driver was subject to seizure. In that case, the only factor making the initial stop valid was the unknown sex of the driver. No other traffic violation had been committed. After remand, the court still permitted the ordinary inquiries of checking for license and registration in spite of the fact that his reasonable suspicions disappeared as soon as he saw the driver was a male.

¶ 20    *Hill*, 401 U.S. 797, was a clear case of mistaken identity. Police had probable cause to arrest person *A*, they reasonably mistook person *B* for person *A*, and they arrested person *B*. The Supreme Court concluded that, so long as the police had a "reasonable, good-faith belief"

the person arrested was the one wanted on the warrant, the arrest was justified. *Hill*, 401 U.S. at 802. Here, we are not talking about a full-blown arrest but merely the "brief detention" inherent in an investigatory traffic stop to check the identification of someone in the vehicle. In *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530 (2014), cited by the State, the Supreme Court, when discussing "reasonableness," said: "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials ***." *Heien*, 574 U.S. at ___, 135 S. Ct. at 536. "The limit," they said, "is that 'the mistakes must be those of reasonable men.' " *Heien*, 574 U.S. at ___, 135 S. Ct. at 536. Although the mistake in *Heien* related to a mistaken understanding of the law, the court used the same analysis for mistakes of fact. The mistaken fact in the case before us was the actual identity of the passenger; however, the trial court agreed the passenger looked very similar to the person wanted on a warrant and concluded the officer was acting in good faith at the time of the stop.

¶ 21 Nothing *prohibits* us from accepting the trial court's conclusions as part of our *de novo* review. Here, there was nothing unreasonable about the trial court's conclusion the officer was acting in good faith. Unlike those cases where the court is called upon to assess the basis for the officer's suspicions regarding a person's behavior, here, it was simply a matter of "this looks like the guy I know to be wanted on a warrant." The trial court found the officer's belief to be in good faith. When coupled with the court's own recognition that the two individuals did in fact look very similar, we cannot conclude the stop was unreasonable. When viewing the photographs included in the record, the general physical description and the appearance of the two are similar. Looking closely at them, with sufficient time to analyze each photo, is it possible to say they look different? Of course. But those were not the circumstances facing Officer Baker, and the trial court recognized that. Do we find the trial court's conclusion the two looked very similar was unreasonable under the circumstances? No.

¶ 22 Where the trial court erred was in finding the officer either needed to be certain in his identification or be able to point to other corroborating evidence. This is not a situation involving the need for probable cause. We find no such standard suggested by any of the mistaken identity cases, for good reason. As stated above, unlike those situations where the court is called upon to evaluate the reasonableness of an officer's suspicion of behavior or actions upon which he relied to justify the stop, *i.e.*, the reasonable, articulable suspicion of criminal activity, here the existence or nonexistence of suspicious criminal activity is irrelevant. It is the status of the suspect at issue, not his or her actions. The only question before the court in such a case is whether the officer was reasonable in his belief that the person he saw was the one wanted on the warrant. The Supreme Court has said "certainty" is not required, thereby addressing the first basis upon which the trial court granted the suppression motion. *Hill*, 401 U.S. at 804. As to the second basis, the need for some form of independent corroborative evidence, we also find no case requiring some sort of independent corroboration in order to effectuate a brief traffic stop in order to ascertain the identity of an occupant whom officers reasonably suspect to be wanted on a warrant. It is true that where courts are reviewing whether officers had probable cause to arrest someone suspected as wanted on a warrant, more may be required since we are moving from a brief investigative detention to a full-blown arrest. In *People v. Gordon*, 311 Ill. App. 3d 240, 246-48, 723 N.E.2d 1249, 1253-55 (2000), the Second District discussed *Hill*, 401 U.S. 797, within the context of mistaken arrests. It noted how the Supreme Court in *Hill* found that, as long as police had probable cause to arrest one party, a reasonable mistake as to the identity of a second party actually arrested would still

constitute a valid arrest. Defendant relies on a definition of "reasonableness" as it relates to probable cause arrests with or without a warrant, as in *People v. Love*, 199 Ill. 2d 269, 275-76, 769 N.E.2d 10, 14-15 (2002), and *People v. Gonzalez*, 184 Ill. 2d 402, 425, 704 N.E.2d 375, 386 (1998) (Heiple, J., dissenting). In addition, defendant argues the level of reasonableness would be different based on the seriousness of the offense, a principle for which we find no support. The court in *Gordon* adopted the language of *Sanders v. United States*, 339 A.2d 373 (D.C. App. 1975), when discussing the standard for determining whether an officer's actions were in "reasonable good faith" in the context of mistaken identity arrests:

> " '[T]he seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. Should doubt as to the correct identity of the subject of [the] warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual.' " *Gordon*, 311 Ill. App. 3d at 249 (quoting *Sanders*, 339 A.2d at 379).

¶ 23 In *Hackett*, 2012 IL 111781, our supreme court discussed what was needed to effectuate an investigative traffic stop. Noting how such stops may frequently be supported by the classic "probable cause" necessary for arrest, the court noted how the less exacting standard of "reasonable, articulable suspicion" was sufficient. (Internal quotation marks omitted.) *Hackett*, 2012 IL 111781, ¶ 20. "A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Hackett*, 2012 IL 111781, ¶ 20.

¶ 24 Our supreme court has also determined the reasonableness of particular law enforcement practices are to be judged by balancing the promotion of legitimate governmental interests against the intrusion on an individual's fourth amendment interest to be free from arbitrary interference with an individual's personal security. See *People v. Jones*, 215 Ill. 2d 261, 269, 830 N.E.2d 541, 549 (2005).

¶ 25 Here, we already know the trial court found the appearance of the two individuals "quite similar." Further, we know the court concluded the officer was acting in good faith when he stopped the vehicle to ascertain the identity of the passenger, whom he believed to be wanted on an arrest warrant. This would seem to be a legitimate governmental interest in apprehending persons wanted on warrants. To what extent was there interference with the passenger's personal security? Within less than one minute after the initial stop, Officer Baker told the passenger Baker believed him to be someone else. One of the reasons he could not complete his assessment of the passenger's identity earlier was because the passenger was riding low in the seat and leaning back behind the center pillar of the car. The officer was aware that people frequently ride that way when they are seeking to avoid detection. This observation occurred just after Officer Baker noticed the vehicle decelerate rapidly upon coming into view of his marked squad car. Is he required to be right about his suspicions regarding either the reason for such rapid deceleration or the passenger's reason for so riding, or is it enough that these factors contributed to the officer's suspicion? When discussing the higher standard of probable cause, as opposed to reasonable suspicion, the United States Supreme Court said in *Brinegar v. United States*, 338 U.S. 160, 176 (1949), "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for

some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

¶ 26 Almost 50 years later, the Court was still seeking to define the difference between "reasonable suspicion" and "probable cause." In *Ornelas*, 517 U.S. 690, it noted the impossibility of articulating it precisely. "They are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (Internal quotation marks omitted.) *Ornelas*, 517 U.S. at 695 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The Court said it has described "reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas*, 517 U.S. at 696. It considered reasonable suspicion a fluid concept to be decided on its own facts and circumstances and found the primary components to be the events leading up to the stop and then the decision whether these historical facts viewed from the standpoint of an objectively reasonable police officer amounted to reasonable suspicion. *Ornelas*, 517 U.S. at 696.

¶ 27 We do not believe there is a specific legal requirement articulated by any published Illinois case requiring an officer under these circumstances to be able to point to some "corroborative facts" other than his reasonable suspicion. In the case before us, the trial court had the additional facts of the unusual driving behavior upon seeing the marked squad car, along with the seating of the passenger to consider. These were relevant to the officer and buttressed his suspicion the passenger was, in fact, the wanted person he quite similarly resembled. In addition, the trial court had available to it the subsequent actions of the officer before effectuating the stop. Officer Baker was sufficiently certain the passenger was Lee that he wanted another police officer present for backup and followed the vehicle for a full 30 blocks until one arrived. Being familiar with Lee, Officer Baker knew the need for more than one officer necessitated that he call to have someone leave their normal patrol area to assist him. Had he been less certain, it is unlikely he would have bothered. Further, when viewing the photographs, the trial court concluded they were very similar. These are additional objective facts corroborative of Officer Baker's suspicion.

¶ 28 Having concluded the suspicions of the officer were reasonable under the circumstances, the trial court's decision to grant the motion to suppress due to a lack of certainty as to the identity of the passenger or lack of other corroborative facts was erroneous in that it placed an additional burden on the officer seeking to effectuate such a stop for which we can find no support in the law.

¶ 29 B. Probable Cause

¶ 30 Defendant argues that smelling cannabis cannot create probable cause because Illinois decriminalized marijuana possession under 10 grams. We disagree.

¶ 31 "A recognized exception to the fourth amendment's warrant requirement is the 'automobile exception,' which is based on the understanding that automobiles may be readily driven away often rendering it impossible for officers to obtain warrants for their search." *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28, 22 N.E.3d 368. "Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312, 645 N.E.2d 195, 200 (1994). "Probable cause means more than bare suspicion. Probable cause exists where the

arresting officer has knowledge of facts and circumstances that are sufficient to justify a reasonable person to believe that the defendant has committed or is committing a crime." *Jones*, 215 Ill. 2d at 273-74.

¶ 32    Here, Officer Baker searched the car because he detected the odor of "raw" cannabis. Despite defendant's contentions about the state of the law, marijuana possession remains unlawful. "It is unlawful for any person knowingly to possess cannabis." 720 ILCS 550/4 (West 2016). Defendant's primary argument comes from the fact that marijuana has become "decriminalized," as it no longer carries a possible jail sentence. However, "decriminalization" is a misnomer. As the First District stated in *In re O.S.*, 2018 IL App (1st) 171765, ¶ 29, 112 N.E.3d 621, "decriminalization is not synonymous with legalization." It noted that, under Illinois law, the knowing possession of cannabis is still a criminal offense under section 4 of the Cannabis Control Act and that possession of more than 10 grams remains a crime subject to criminal penalties. *O.S.*, 2018 IL App (1st) 171765, ¶ 29.

¶ 33    In *People v. Stout*, 106 Ill. 2d 77, 477 N.E.2d 498 (1985), our supreme court said an officer has probable cause to conduct a search of a vehicle if he smells the odor of a controlled substance coming from the vehicle and it is shown he has the necessary training and experience to detect controlled substances. "[D]istinctive odors can be persuasive evidence of probable cause. A police officer's detection of controlled substances by their smell has been held to be a permissible method of establishing probable cause." *Stout*, 106 Ill. 2d at 87. The court went on to point out there was no additional corroboration necessary "where a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle." *Stout*, 106 Ill. 2d at 88.

¶ 34    In *People v. Williams*, 2013 IL App (4th) 110857, ¶ 32, 990 N.E.2d 916, this court noted that although cases involving probable cause based on "sense of smell" may not be as numerous as those where probable cause is based on what is visually observed, those involving "an individual's sense of smell can be of the 'most persuasive character' [citation], particularly in cases involving cannabis."

¶ 35    In *People v. Smith*, 2012 IL App (2d) 120307, 982 N.E.2d 234, the Second District addressed the issue of "fresh" versus "burnt" cannabis and found no basis for distinguishing the two when determining whether the smell may form the basis for probable cause for a police officer's subsequent search. In *Smith*, the officer testified, as he approached the driver's side of the vehicle, he smelled "a slight odor of cannabis" coming from inside the vehicle, which he said smelled "fresh." (Internal quotation marks omitted.) *Smith*, 2012 IL App (2d) 120307, ¶ 2. Based on his experience, he believed it to be cannabis and conducted a "K-9" sniff of the vehicle. *Smith*, 2012 IL App (2d) 120307, ¶ 3. The court considered the language of *Stout*, quoted above, and found, as do we, there was no modifier preceding cannabis and there was no reasonable basis to limit its holding only to "burnt" cannabis. *Smith*, 2012 IL App (2d) 120307, ¶ 16. The *Smith* court pointed to a long list of cases outside Illinois involving raw versus burnt cannabis in which "the smell of marijuana [is] alone sufficient to furnish probable cause to search a vehicle without a warrant." (Internal quotation marks omitted.) *Smith*, 2012 IL App (2d) 120307, ¶ 19.

¶ 36    Defendant argues that, since Illinois has decriminalized small quantities of cannabis, the smell of cannabis alone cannot support probable cause for a warrantless search. What he fails to do is explain how a police officer, confronted with the obvious odor of cannabis when he first approaches a vehicle, is left to discern how much cannabis may be present by its smell

alone. In *O.S.*, the court noted the majority of jurisdictions addressing this issue have found "decriminalization is not synonymous with legalization and that the odor of marijuana remains indicative of criminal activity despite the passage of statutes decriminalizing the possession of smaller amounts of cannabis." *O.S.*, 2018 IL App (1st) 171765, ¶ 28. The State noted the court in *O.S.* found that even in Colorado, where possession of an ounce of cannabis has been *legalized*, not merely decriminalized, the state supreme court still considers the odor of marijuana to be relevant to a probable cause determination and can support an inference that a crime is ongoing, even though possession of an ounce or less is legal. We find their reasoning just as applicable here because a "substantial number of other marijuana-related activities remain unlawful." *People v. Zuniga*, 2016 CO 52, ¶ 23, 372 P.3d 1052. It was for that reason they concluded "the odor of marijuana is still suggestive of criminal activity." *Zuniga*, 2016 CO 52, ¶ 23. Defendant provides no rationale for requiring police officers to somehow ascertain the quantity of marijuana before the search in order to determine whether probable cause exists. In fact, such a requirement would be unworkable and contrary to the current body of law. It would lead to an absurd result where police officers, after performing a traffic stop, smelled the odor of cannabis emanating from the vehicle but could not investigate it further unless they knew the amount involved.

¶ 37   Here, as the trial court concluded, the search was clearly justified upon establishing probable cause for the search. Once Officer Baker smelled the odor of cannabis, probable cause for the search existed. The fact that he almost immediately observed cannabis in plain view was merely an added bonus.

¶ 38                                    III. CONCLUSION

¶ 39   For the reasons stated, we reverse and remand for further proceedings consistent with this opinion. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 40   Reversed and remanded.

¶ 41   JUSTICE TURNER, specially concurring:

¶ 42   While I agree with the result reached by the majority in this case, I cannot agree with the complexity of the majority's analysis and must specially concur. Based on the trial court's factual findings, the standard of review, and prevailing law, the trial court erred in granting defendant's motion to suppress.

¶ 43   The court based its decision on its finding Officer Baker was not certain the passenger in defendant's vehicle was Duane Lee, an individual wanted on an outstanding warrant. The trial court noted Officer Baker did not have corroborating information to rely upon in concluding the passenger was Lee.

¶ 44   According to our supreme court, "[t]he law is well settled that stopping a vehicle and detaining its occupants constitute a 'seizure' within the meaning of the fourth amendment. [Citations.] Such a seizure is analyzed pursuant to the principles set forth in *Terry*, 392 U.S. 1." *Timmsen*, 2016 IL 118181, ¶ 9. "Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime." *Timmsen*, 2016 IL 118181, ¶ 9. A reasonable

belief an individual in a car has an outstanding warrant for his arrest also justifies a brief, investigatory stop of the vehicle. *Safunwa*, 299 Ill. App. 3d at 709-11.

¶ 45 Officer Baker, whom the court found was not acting in bad faith, did not need to be absolutely certain the passenger in defendant's car was Lee. Baker provided sufficient articulable facts justifying the brief stop of defendant's vehicle. According to Baker's testimony, defendant's car rapidly decelerated as it approached his squad car. The passenger in the front seat of the vehicle was reclined way back so he was very low in the car. Based on his experience as a police officer, Baker testified some individuals who are trying to avoid detection, either by law enforcement because of outstanding warrants or rival gangs, often sit like this. Baker was also able to get a good look at the passenger when he pulled his squad car alongside defendant's vehicle. After seeing the passenger's hair, face, skin tone, and build, Baker believed the passenger was Lee. The trial court agreed the appearances of the passenger and Lee were similar.

¶ 46 Although Officer Baker was wrong in identifying the passenger as Lee, his belief was reasonable based on the totality of the circumstances in this case. As a result, Officer Baker's stop of defendant's car was justified.

¶ 47 Further, Officer Baker was not required to end the stop once he determined the passenger was not Lee. Officer Baker testified he smelled raw cannabis once he made contact with defendant's passenger, which justified the continuation of the stop. Baker also observed a "bud" in the backseat of the car, which added additional justification for the stop's continuation.

¶ 48 As to the majority's determination Officer Baker's warrantless search of defendant's vehicle was justified, I agree Baker had probable cause to search defendant's vehicle following the lawful stop. As the majority noted, Officer Baker smelled raw cannabis when he made contact with the passenger in defendant's car and saw a "bud" in the car. In addition to these two factors relied on by the majority, Officer Baker also testified defendant did not immediately stop his vehicle when Officer Baker activated his police lights, which can be indicative of an attempt by individuals in the car to conceal, attempt to conceal, or destroy contraband or attempt to retrieve a weapon.

¶ 49 Accordingly, like the majority, I agree the trial court erred in granting defendant's motion to suppress evidence.