# IN THE COURT OF APPEALS OF IOWA

No. 18-2202
Filed December 18, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TROY J. FORD,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

A defendant appeals his conviction for third-offense possession of marijuana. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Tabor, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**TABOR, Judge.**

A Davenport police officer mistakenly arrested Troy Ford based on an outstanding warrant for a different individual. Ford argues the search incident to that invalid arrest was unreasonable and the district court should have suppressed the marijuana found. Because the officer did not act reasonably in searching Ford before verifying his identity as the person named in the warrant, we reverse the suppression ruling and remand for further proceedings consistent with this opinion.

**I.      Facts and Prior Proceedings**

Davenport police officers Ryan Leabo and Angela Jarrin responded to a domestic disturbance just after 10:00 p.m. in late January 2018, according to the minutes of testimony. The dispatch reported "a black male had been assaulting a white female on the porch." When the officers arrived, they could hear arguing inside the house.

Finding six people inside, the officers separated to speak with different factions. The residents asked Officer Jarrin to remove a female guest. That guest told the officer the disturbance at the house was "only a verbal argument." Meanwhile, Officer Leabo asked resident Troy Ford to come outside so he "could interview him about the incident." Officer Leabo wrote the following in his case report narrative:

> I gathered Troy's information and ran a standard wanted check on Troy. Dispatch informed me he had multiple warrants. I asked dispatch if the warrants were valid. Dispatch informed me they were. I placed Troy in properly spaced and double locked handcuffs. Troy stated he did not believe the warrants were valid and he had been mixed up with another Troy Ford before.
> I walked Troy back to my squad car. A search incident to arrest revealed 2.10 grams of marijuana (confirmed with a Valtox test) in the defendant's right pocket. I initially was not sure if the

narcotics was marijuana due to the fact it was finely ground. Troy excitedly uttered it was marijuana when I asked him if it was heroin.

Dispatch asked me to confirm Troy's information. I gathered Troy's social security number and included that with his name and date of birth. Dispatch informed me they thought I had a different Troy Ford and the person I had was not wanted.

The State charged Ford with possession of marijuana, third or subsequent offense. *See* Iowa Code § 124.401(5) (2018). Ford moved to suppress the marijuana, alleging the search violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Iowa Constitution. The parties stipulated to the facts asserted in the defense motion and the State's resistance, presenting no evidence at the suppression hearing. The district court denied the motion to suppress.

After that denial of his motion to suppress, Ford waived his right to a jury and agreed to a bench trial on the minutes of testimony. The court found Ford guilty as charged. Ford now appeals. He raises two claims: (1) the district court erred in denying his motion to suppress and (2) the court erred by not conducting a full hearing to determine whether his stipulation to the prior drug offenses was knowing and voluntary. Because our ruling on his first claim is dispositive, we do not reach his second issue.

## II.     Scope and Standard of Review

"Because this case concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court's suppression ruling is de novo." *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015) (citing *State v. Watts,* 801 N.W.2d 845, 850 (Iowa 2011)). Our task is to evaluate independently the totality of the circumstances appearing in the record—that includes the

evidence from both the suppression hearing and the trial. *State v. Vance,* 790 N.W.2d 775, 780 (Iowa 2010).

### III. Analysis

We presume Officer Leabo's warrantless search of Ford's pocket was unreasonable unless the State can establish an exception to the warrant requirement. *See Gaskins,* 866 N.W.2d at 7. Here, the State relies on the exception for searches incident to arrest. "A lawful arrest is, of course, a predicate for a lawful search incident to the arrest." *State v. Ceron,* 573 N.W.2d 587, 589 (Iowa 1997).

So first we must ask: Was Ford's arrest lawful? The State acknowledges Officer Leabo made a mistake in arresting Ford. The warrants flagged by dispatch were for a different person.

But the State claims that mistake was reasonable, citing a line of cases in which the police mistook the arrestee for the subject of a warrant. *See Hill v. California,* 401 U.S. 797, 802 (1971); *State v. Payton,* 401 N.W.2d 219, 220 (Iowa Ct. App. 1986). *Hill* held: "When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." 401 U.S. at 802. The *Hill* court emphasized the objective nature of the test, explaining "subjective good-faith belief would not in itself justify either the arrest or the subsequent search." *Id.* at 804. "But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," according to *Hill,* which found "on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.*

In *Payton*, our court followed *Hill*, finding the mistaken arrest of a son on his father's outstanding warrant was reasonable based on their identical names and the son's lack of proper identification. 401 N.W.2d at 221. Police stopped Donald Devern Payton II driving a van with a temporary paper plate. *Id.* at 220. When asked for his driver's license, Payton instead handed officers a Department of Transportation form. *Id.* The officers ran a check based on that form and found an outstanding warrant and a driver's license suspension notice for a Donald Payton. *Id.* Police arrested the driver and searched the van, finding illegal guns. *Id.* Police later discovered the warrant was for Payton's father. We reasoned: "Generally evidence is properly admissible against a person mistakenly arrested if (1) the arresting officer acts in good faith and (2) has reasonable, articulable grounds to believe the suspect is the intended arrestee." *Id.* at 220–21.

But in a more recent case, our court found a mistaken-identity arrest to be unreasonable. *See State v. Jacobsen*, No. 06-1867, 2007 WL 3085910, at *3 (Iowa Ct. App. Oct. 24, 2007). We invalidated a search incident to arrest where the officer arrested Joshua Jacobsen based on word from dispatch that a person with the same name had an outstanding arrest warrant. *Id.* Although Jacobsen told the officer he was not the person identified in the warrant, the officer performed the search without verifying the arrest warrant against Jacobsen's social security number. *Id.*

*Jacobsen* cited *Hill*, 401 U.S. at 803, for the common-sense notion that "aliases and false identifications are not uncommon" in this context. *Jacobsen*, 2007 WL 3085910, at *3. At the same time, we counterbalanced that reality with this "apt" advisory: "Should doubt as to the correct identity of the subject of [the]

warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual." *Id.* (quoting *Sanders v. United States*, 339 A.2d 373, 379 (D.C. 1975)).

Ford's situation is closer to the facts of *Jacobsen* than to those in *Payton*. Like the officer in *Jacobsen*, Officer Leabo did not take immediate reasonable efforts to confirm or deny that the arrest warrant located by dispatch applied to this Troy Ford. The officer failed to do so even after the accused explained he had been "mixed up before" with another Troy Ford.

To defend the suppression ruling, the State contends: "Requiring police to engage in some level of undefined additional verification in every case is an unworkable rule that is inconsistent with the reasonableness mandate contained in both the Fourth Amendment and Article I, section 8." The State's contention is overblown. It was not unworkable for the officer to give Ford's social security number to dispatch to be sure he was the person named in the warrant. Indeed, Officer Leabo did so moments after finding the marijuana in Ford's pocket. The State cannot explain why Officer Leabo needed to effectuate the arrest before ensuring one was authorized. With the minimal additional effort of providing dispatch Ford's social security number at the same time as his name, Officer Leabo would have discovered the information did not match and spared Ford this unjustified intrusion on his liberty.

The State agrees providing only a suspect's name when investigating possible search warrants, as in *Jacobsen*, may be unreasonable. *See* 2007 WL 3085910, at *2. But the State asserts Officer Leabo gave dispatch more than just

Ford's name before the arrest. Citing the suppression ruling, the State contends the officer provided the defendant's name, date of birth, ethnicity, and gender.

Because Ford's constitutional rights are at stake, we review his suppression challenge by independently examining the totality of circumstances as shown by the entire record.[1] *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2001). We are not bound by the district court's factual findings. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). Often we defer to those findings because the district court has a chance to evaluate the credibility of the witnesses. *Id.* But here no such evaluation occurred because the parties presented no testimony at the suppression hearing. Instead, the prosecutor and defense counsel "stipulated" to the facts asserted in the motion to suppress and the State's resistance. But the assertions in the State's resistance to the motion to suppress do not appear anywhere else in our record.[2]

What does appear elsewhere is not entirely consistent with the information detailed in the State's resistance to the motion to suppress. For instance, Officer Leabo's field narrative—attached to the minutes of testimony—does not mention providing Ford's date of birth explicitly until after dispatch asked him to "confirm Troy's information" after his arrest.

---

[1] The parties stipulated not just to the suppression record but also to the minutes of testimony and attached police reports, to determine Ford's guilt at the bench trial.

[2] The State's resistance presents a detailed rendition of Officer Leabo's interaction with Ford, even placing certain statements in quotations. But the assistant county attorney does not attribute the information to any source. At the suppression hearing, defense counsel agrees "the facts themselves are not in dispute" and further states: "So I guess, in other words, we would stipulate to the fact pattern that's I guess, been reported at this point." We recognize the parties' stipulation but note a factfinder may reject stipulated evidence. *See State v. Roe*, 642 N.W.2d 252, 254 (Iowa 2002).

And the odds are long that Ford shared an exact birthdate with the individual in the outstanding warrants identified by dispatch. The district court tackled that mystery by writing: "No evidence was presented that the Defendant's name, date of birth, sex, or race did not match that of the Troy Ford named in the arrest warrant." But that observation misplaces the burden. The burden rested with the State to prove a valid arrest as a predicate to the search-incident-to-arrest exception to the warrant requirement. The State did not present evidence that defendant's date of birth (or his sex, race, or social security number) *did* match the information listed on the outstanding warrant for a different individual named Troy Ford. Only such a match would allow a court to find Officer Leabo's mistake was "understandable" and the arrest a reasonable response to the situation facing police at the time. On these facts, the State did not establish the reasonableness of the mistaken-identity arrest under the Fourth Amendment.

That bottom line would not change even if we assume Officer Leabo *did* provide dispatch with Ford's date of birth before placing him under arrest on the outstanding warrants. According to the stipulated facts in the State's resistance, Ford persisted in telling the officer that he had the "wrong guy" and the officer informed Ford they would "figure out what is going on when they get to the squad car." The officer handcuffed and searched Ford before placing him the squad car. The county attorney wrote: "It was after this, that it is confirmed through dispatch that the warrants were, in fact, for a different Troy Ford." This case is unlike *Payton* where the driver failed to provide police with identification that could have distinguished him from his father. *See* 401 N.W.2d at 221. Here, Officer Leabo was able to "gather Troy's social security number" directly after his arrest and

confirm with dispatch that the warrants were not for this Troy Ford. It was unreasonable for the officer not to do so before the arrest. Thus we find this search violated the Fourth Amendment.

Ford advances another reason exists for reversing the suppression ruling. Even if the search following Officer Leabo's mistaken-identity arrest was reasonable under the federal constitution, Ford argues article I, section 8 of the Iowa Constitution provides greater protection. *Payton* is based on a "good faith" exception for officers who mistakenly, but reasonably believe the suspect is the intended arrestee. *Id.* at 220–21. But fourteen years after *Payton*, our supreme court rejected the good faith exception to the exclusionary rule under Iowa law. *See State v. Cline*, 617 N.W.2d 277, 290 (Iowa 2000), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601 (Iowa 2001); *see also State v. Prior*, 617 N.W.2d 260, 268 (Iowa 2000).

In both *Cline* and *Prior*, our supreme court held that an illegal search and seizure would result in exclusion of the evidence from trial under the state constitution, even if an officer held an objectively reasonable belief that his or her conduct was lawful. 617 N.W.2d at 292–93; 617 N.W.2d at 268. The *Cline* court reasoned that "the exclusionary rule serves a deterrent function even when . . . officers act in good faith." 617 N.W.2d at 290. By providing a remedy for a constitutional violation, the rule also "protects the integrity of the courts" and "tend[s] to encourage lawmakers to take care to ensure that any law they enact passes constitutional muster." *Id.* at 289–90. "Consequently, to adopt a good faith exception would only encourage lax practices by government officials in all three branches of government." *Id.* at 290.

Ford is correct that under the *Cline* and *Prior* line of cases, the State cannot avoid suppression based on an officer's good faith reliance on information from dispatch. A similar situation is illustrative. In *Arizona v. Evans,* the United States Supreme Court applied a good faith exception to the exclusionary rule for an arrest based on an expired warrant that remained on police computers due to data entry errors. 514 U.S. 1, 14–15 (1995). But because Iowa does not recognize the good faith exception to the exclusionary rule, our court declined to apply *Evans* when a defendant claimed he was arrested on a recalled warrant. *See State v. Rolan*, No. 06-1105, 2007 WL 1827524, at *2 (Iowa Ct. App. June 27, 2007). To be consistent, we must reject a good faith exception to a mistaken-identity arrest when the officer has not provided dispatch with enough information to verify if the subject of the warrant is the detained person. *See Grant v. State*, 262 S.E.2d 553, 553 (Ga. Ct. App. 1979) ("An arrest warrant is valid only against the person named in it . . . . And even though [the officer] acted in good faith in arresting another than the person named, the warrant will not justify the action.").

We reverse the suppression ruling and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

Doyle, P.J., concurs; Vogel, S.J., dissents.

**VOGEL, Senior Judge** (dissenting).

Because the Davenport police acted reasonably in arresting Troy Ford on outstanding warrants for a different individual and searching him incident to that arrest, I respectfully dissent.

"Generally evidence is properly admissible against a person mistakenly arrested if (1) the arresting officer acts in good faith and (2) has reasonable, articulable grounds to believe the suspect is the intended arrestee." *State v. Payton*, 401 N.W.2d 219, 220–21 (Iowa Ct. App. 1986); *see also Hill v. California*, 401 U.S. 797, 802 (1971) (finding an arrest based on mistaken identity is valid when officers "have probable cause to arrest one party" and "reasonably mistake a second party for the first party"). "Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Payton*, 401 N.W.2d at 221.

Ford argues the officers did not act reasonably in mistaking him for the Troy Ford named in the warrants. He faults the officer for arresting and searching him after the initial warrant check without verifying "the matter further with a simple check of his social security number or some other specific identification." The arresting officer need not identify Ford with absolute certainty prior to the arrest. *See id*. As the district court found on the stipulated facts, the arresting officer verified Ford's identity using his name, sex, birthdate, and ethnicity before arresting him based on the initial match with outstanding warrants. The officer then searched and moved Ford to his patrol vehicle for safety due to the chaotic scene before further verifying Ford's identity. Based on the officer using multiple identifying characteristics to match Ford with the warrants initially, plus the need

to secure Ford quickly in the patrol vehicle for safety, the officer acted reasonably in arresting Ford before further verifying his identity. *See id.* ("We determine defendant's name, coupled with the fact he lacked a driver's license, identification and registration, support a finding the officer was acting under a reasonable belief the defendant was the person named in the parking warrant."); *see also Hill v. Scott*, 349 F.3d 1068, 1073–74 (8th Cir. 2003) ("This is a case where further investigation would have cast doubt on whether [the defendant] was the subject of the warrant. But that is always the case where an arrestee denies being the subject of a facially valid warrant; there can always be more investigation to verify identity. The question is, how much investigation does the Constitution require?"); *People v. Gordon*, 723 N.E.2d 1249, 1255–56 (Ill. App. Ct. 2000) (finding a mistaken arrest was reasonable when the officer learned "there was an active warrant for a person whose name, sex, race, and date of birth either matched or nearly matched" the defendant's information); *State v. Bateman*, 99 P.3d 656, 660 (Mont. 2004) (finding an arrest based on mistaken identity was reasonable when the officers had evidence the arrestee and the wanted man had identical first and last names, "had similar ages, lived in the same area, and had similar physical characteristics").

The majority likens Ford's claim to *State v. Jacobsen*, No. 06-1867, 2007 WL 3085910 (Iowa Ct. App Oct. 24, 2007). There, an officer investigated a suspicious person behind a convenience store named Joshua James Jacobsen. *Jacobsen*, 2007 WL 3085910, at *1. The officer believed he requested a warrant check using "Jacobsen's first, middle, and last name, but he was not sure." *Id.* The dispatcher initially found no matching warrants but later reported "a warrant

on 'James Jacobson' or 'Joshua Jacobsen.'" *Id.* The officer then arrested Jacobsen based on the initial match, though officers later determined Jacobsen's middle name and social security number did not match the person named in the warrant. *Id.* By contrast, the arresting officer here provided Ford's name and other information for the initial warrant check, and the dispatcher conclusively found multiple warrants matching this information. The arresting officer here also faced the pressure of quickly separating Ford from the chaotic scene and securing him in his police vehicle for safety. This additional information and the need to act quickly for safety supports the reasonableness of the officer's actions in initially arresting Ford.

Ford's suppression hearing was on the minutes with stipulated facts, and I acknowledge the minutes are unclear on exactly what information the arresting officer provided for the initial warrant check. The arresting officer's narrative only specifies he "gathered Troy's information" for the first "standard" warrant check, and he "gathered Troy's social security number and included that with his name and date of birth" for the second warrant check. In its resistance to the motion to suppress, the State asserted the arresting officer "provided Dispatch with the Defendant's name, date of birth, and described him as a black male." At the suppression hearing, Ford's counsel took no issue with the facts alleged in the State's resistance and explicitly stipulated to them, stating

> Prior to filing this motion there was an informal conversation between [the State's attorney] and I regarding the facts and, frankly, they are not—the facts themselves are not in dispute, so we would not require a record being made about the facts themselves. So I guess, in other words, we would stipulate to the fact pattern that's, I guess, been reported at this point.

Accordingly, the court found the arresting officer "provided dispatch with the Defendant's name, date of birth, and described him as a black male" for the initial warrant check. I believe the record supports this finding, and Ford does not dispute this finding on appeal.

Because I believe the district court properly denied Ford's motion to suppress based on the arresting officer reasonably matching Ford with the outstanding warrants, I would affirm his conviction and sentence.